## VAN WINKLE *v.* HARRIS.  VAN WINKLE *v.* PETTY.

1. Where an agent was "authorized and directed" by the owner of a described tract of land to "make sale" of it for $5,200, "one thousand [dollars] of which was to be paid in cash," the agent under such authority did not have the right to bind the owner by a written contract with the plaintiff, wherein it was provided: "This agreement is made subject to right of purchaser to investigate titles to the property, and to decline to perform if titles of the vendor be legally insufficient and she fails to perfect the same within a reasonable time. . . Cash payment to be made when vendor complies with her obligation to make satisfactory showing as to title."

2. Where the owner of a tract of land employed an agent to find a purchaser for the land upon the "conditions that the purchase-price would net" the owner $5,000, of which $1,000 "was to be paid cash and the balance to be paid at such time as would suit the purchaser, the time not to exceed five years, and the deferred payments to bear interest at seven per cent.," and directed the plaintiff to "close contract of sale upon the terms herein named," a written contract made by the agent, having in it the provisions quoted in the preceding note, was not one upon the terms upon which the agent was directed by the owner to close a contract with the purchaser.

OCTOBER 12, 1911.

Petition for specific performance, etc. Before Judge Bell. Fulton superior court. December 10, 1910.

*Lavender R. Ray,* for plaintiff in error.

*Simmons & Simmons,* contra.

HOLDEN, J. In the first case stated, J. L. Harris (hereinafter called the plaintiff) brought suit against Mrs. Mary J. Van Winkle, plaintiff in error (hereinafter called the defendant), alleging that the defendant was the owner and in possession of a described tract of land on or before May 16, 1910. The second, third, and fourth paragraphs of the petition are as follows:

"(2) That some time prior to May 16, 1910, the said Mrs. Mary J. Van Winkle placed the above tract or parcel of land in the hands of one M. L. Petty, a real estate agent or broker, in the city of

Atlanta, who is engaged in the business of selling property for people who may entrust their property to him for sale. And on or about May 16, 1910, the said M. L. Petty was authorized and directed by the defendant to make sale of said property to your petitioner at and for the sum of fifty-two hundred dollars ($5,200.00), one thousand of which was to be paid in cash, and the balance to be divided in three installments of fourteen hundred dollars ($1,400.00) each, payable, respectively, 24, 42, and 60 months after date, with interest at 7 per cent.; the said defendant then and there authorizing and instructing the said Petty to give to your petitioner such terms on the deferred payments, not exceeding five years, as petitioner might desire.

"(3) That on May 16, 1910, your petitioner agreed with said M. L. Petty, as agent for the defendant, to purchase said property at and for the sum of five thousand two hundred dollars ($5,200.00), and entered into a written agreement with the said M. L. Petty for the purchase of said property on the day aforesaid, and paid to the said agent the sum of one hundred dollars ($100.00) earnest money to be applied as a credit on the cash payment to be made as provided in said contract. A copy of said contract is as follows:

"'Georgia, Fulton County. Memorandum of agreement between J. L. Harris (as purchaser) and Mrs. Mary J. Van Winkle (as vendor) respecting sale of property described below: This agreement is made subject to right of purchaser to investigate titles to the property, and to decline to perform if titles of the vendor be legally insufficient and she fails to perfect the same within a reasonable time. Subject-matter of sale: House and lot in the city of Atlanta known as # 150 Auburn Ave. Terms: Purchase-price, $5,200. Cash payment, $1,000.00. Balance to be divided into three installments, payable after date fixed for each payment, as follows: (1) $1,400 due 24 months after said date; (2) $1,400 due 42 months after said date; and (3) $1,400 due in 60 months, at 7% interest. Cash payment to be made when vendor complies with her obligation to make satisfactory showing as to title. Purchase-money notes for deferred payments to be given at same time, bearing interest from date at the rate of 7 per cent. per annum, falling due as indicated above, and payable at or before maturity. Special stipulations: I assent to the terms of the foregoing agree-

ment. This 16th day of May, 1910. J. L. Harris (Purchaser). M. L. Petty, Agt. for (Vendor).

" 'Received from the purchaser, as earnest money, $100.00, the same to be applied as a credit on the cash payment above provided for. This 16th day of May, 1910. M. L. Petty, Agent for the Vendor.'

"(4) Your petitioner shows that he contracted for the purchase of said property in good faith, and believed he was paying a fair and reasonable valuation for the same, and that said M. L. Petty, as an agent for the defendant, was authorized by the defendant to make sale of said property to your petitioner upon the terms and conditions named in the foregoing written contract, and that the said Petty acted in good faith in the sale of said property to your petitioner, and that said defendant was and is bound by the terms of said agreement to carry out the same with your petitioner."

The petition further alleged substantially as follows: Petty promised to procure from defendant the "title deeds" to the property and deliver them to the plaintiff, so that he could have the same examined and comply with the contract. On application by Petty to defendant, she refused to furnish the deeds for examination and "repudiated the contract, and stated that she had received a better offer for the property. And petitioner, after making repeated efforts to get title deeds to have the same examined and to get the defendant to carry out her contract, and failing in each of said efforts, finally had said titles examined without being furnished with the title deeds. Your petitioner shows that on July 12, 1910, your petitioner presented the defendant his three promissory notes, dated July 12, 1910, and due, respectively, on the 12th day of July, 1912, on the 12th day of January, 1914, and on the 12th day of July, 1915, for the sum of $1,400.00 each, payable to the order of said Mrs. Mary J. Van Winkle, signed by your petitioner, copies of said notes being hereto attached and marked Exhibits A, B, and C, and at the same time your petitioner tendered to said defendant the sum of one thousand dollars ($1,000.00), the same being a part in cash money, and the balance in checks, your petitioner offering to have the checks cashed and deliver to her the money if she preferred, and at the same time your petitioner presented to the defendant a bond for title, a copy of which is hereto attached marked 'D,' and requested the defendant to accept the money,

checks, and notes in payment for said land and to execute the bond for title to your petitioner, it being usual and customary, in all cases where there is a partial payment for land and notes given for the balance, for the vendor to make to the vendee a bond for title, retaining the title to the land as security for the debt. Your petitioner further shows that the defendant, upon the tender of the money, notes, checks, and the bond for title to be signed by her, repudiated the contract of her said agent, stated that she had not authorized him to make sale of her land, that she had been offered more money for the land since the time said Petty claimed to have made the trade with petitioner, to wit, the sum of six thousand dollars ($6,000.00), and that she would not be bound by any contract made by the said Petty, as agent, with your petitioner. The petitioner's attorney then and there asked her if she desired petitioner to have the checks cashed and present her with the entire one thousand dollars ($1,000.00) in cash. The defendant said, 'No.' She would not accept the money, and would not sign the bond for title, and would not be bound by the contract made by said Petty with your petitioner." Defendant has a good title to the property and is able to comply with the terms of the contract. "She is acting in bad faith, and her only reason for not carrying out said contract is the fact that some one offered her more money for the property than the amount she had agreed to receive from your petitioner, before it was possible for your petitioner to have titles examined and the trade consummated."

Attached to the petition was a copy of the bond for title in the usual form, and copies of the notes referred to. The notes were payable "on or before" the dates referred to in the petition. The plaintiff prayed: that the defendant be required to specifically perform the contract; that she be decreed to execute the bond for titles, or such other bond for titles "as may be reasonable and just;" that she be required to receive the $1,000 and accept .the notes tendered, or such other notes as may be proper in form and substance to carry out the contract; and that the title to the property be decreed to be in the plaintiff upon final payment of all the purchase-money. The plaintiff amended the petition, "by adding the words 'by parol' after the word 'authorized' in paragraph 2, and the same words after the word 'directed' in the same paragraph." To the order of the court overruling a general demurrer the defendant excepted.

The facts in the other case will be stated in the second division of this opinion.

1. The allegations in the second paragraph of the petition state that Petty was appointed the agent of Mrs. Van Winkle to sell the property, and set forth in detail the terms of the contract of sale he was authorized to make as her agent. The third paragraph, among other things, sets forth a copy of the contract made by Petty, as agent of Mrs. Van Winkle, with Harris, the purchaser of the property. The fourth paragraph alleges that "said M. L. Petty, as an agent for the defendant, was authorized by the defendant to make sale of said property to your petitioner upon the terms and conditions named in the foregoing written contract, and that the said Petty acted in good faith in the sale of said property to your petitioner." The allegations quoted should be construed as the conclusion of the pleader that, under the authority set forth in paragraph 2 of the petition, Petty was authorized to sell the property upon the terms and conditions set forth in the written contract. Whether parol authority given an agent to sell land of another is sufficient to authorize him to enter into a written contract binding on the latter need not be considered. If the parol authority given Petty by Mrs. Van Winkle was sufficient to authorize the former to make a written contract for the sale of the land, binding on the latter, we think the petition sets forth no cause of action, and should have been dismissed on demurrer. Paragraph 2 of the petition sets forth the terms of the contract of sale Petty, as the agent of Mrs. Van Winkle, was authorized by the latter to make. It is therein alleged that she authorized Petty to make sale of the property for $5,200, "one thousand of which was to be paid in cash." The written contract made by Petty, as the agent of Mrs. Van Winkle, with Harris, provided: "This agreement is made subject to right of purchaser to investigate titles to the property and to decline to perform if titles of the vendor be legally insufficient and she fails to perfect the same within a reasonable time. . . Cash payment to be made when vendor complies with her obligation to make satisfactory showing as to title." In the contract of sale Petty was authorized to make, $1,000 was to be paid by the purchaser *cash*, and not to be paid "when vendor complies with her obligation to make satisfactory showing as to title." Petty had no authority to impose on Mrs. Van Winkle any obligation to make

any "showing" as to her title, and she gave him no authority to make the payment of the $1,000 conditioned upon her making "satisfactory showing as to title." Nor did she give him authority to make an agreement respecting the sale of the property "subject to right of purchaser to investigate titles to the property, and to decline to perform if the titles of the vendor be legally insufficient and she fails to perfect the same within a reasonable time." When Petty made the contract only $100 was paid, the balance of the $1,000 being tendered nearly two months thereafter. Petty had no authority to make a contract for the sale of the property unless $1,000 of the purchase-money was paid *cash,* and he had no authority to make a contract providing for the payment of the whole, or a part of it, upon conditions, or at a future time without conditions. *Larned* v. *Wentworth,* 114 *Ga.* 208 (39 S. E. 855) ; *Arnett* v. *Tuller,* 134 *Ga.* 609 (68 S. E. 330) ; *Emery* v. *Atlanta Exchange,* 88 *Ga.* 321, 326 (14 S. E. 556) ; Corcoran *v.* White, 117 Ill. 118 (7 N. E. 525, 57 Am. St. R. 858) ; 9 Cyc. 267. The contract made with Harris by Petty as agent of Mrs. Van Winkle not being one Petty was authorized to make, the latter had a right to repudiate it and to refuse to comply with it. Moreover, under the authority given Petty, the deferred payments should have been payable 24, 42, and 60 months after date; whereas the notes provided for in the contract were to be payable "at or before maturity," and the notes tendered were payable "on or before" maturity, thereby giving the right to Harris to pay the note before maturity. If it be conceded that the parol authority of Petty authorized him to make a written contract for the sale of the land of Mrs. Van Winkle binding on her, the written contract he made was not binding on her, as it was not the one he was authorized by parol to make; and the court erred in overruling the general demurrer.

2. In the second case stated, Petty (hereinafter called the plaintiff) brought suit against Mrs. Van Winkle (hereinafter called the defendant), making substantially the following allegations: The defendant owned a described tract of land on May 16, 1910. At that time the plaintiff was a real estate broker engaged in the business of negotiating and effecting sales of real estate. "That on or before the 16th day of May, 1910, the defendant employed the plaintiff to find a purchaser for the above-described property upon the following conditions: That the purchase-price would

net the defendant $5,000.00, of which $1,000.00 was to be paid cash and the balance to be paid at such time as would suit the purchaser, the time not to exceed five years, and the deferred payments to bear interest at seven per cent. (7%), and directed the plaintiff to close contract of sale upon the terms herein named. That the plaintiff, in pursuance of the agreement above mentioned, procured a purchaser in the person of one J. L. Harris, who contracted to purchase the above-described property. A copy of this contract is attached to this petition and marked 'Exhibit A' and made a part thereof. That the said Harris was able and willing to purchase the said property, and that he made a legal tender of the $1,000.00 required to be paid cash, and presented the notes for the deferred payments and demanded a bond for title, and was in every way bona fide ready to carry out the contract. That the plaintiff was to be paid for his services in bringing the purchaser in touch with the defendant and negotiating said sale.. That there was no stipulation between the parties as to what the commission of the plaintiff should be," but there is a universal custom of brokers, known to the defendant, to charge commissions on a specified basis, which in this case would amount to $180, which was a reasonable value of his services, and for which he prayed judgment. The plaintiff amended his petition by adding the word "orally" after the word "defendant," where it first appears in the quotation from the petition. He further amended the petition by attaching a copy of the notes referred to therein, which were tendered by Harris, and by adding that the $1,000 and the notes were tendered by Harris on July 12, 1910. The notes and contract referred to in the petition were in every respect like the copy of the contract set out in the petition in the case referred to in the preceding division of the opinion and the copies of the notes attached thereto. To the order of the court overruling her general demurrer to the petition Mrs. Van Winkle excepted.

According to the allegations of paragraph 4 of the petition, Petty was not only employed to find a purchaser for the property at a price which would net the owner $5,000, of which $1,000 was to be paid in cash, but he was to "close contract of sale upon" certain terms, one of which was that $1,000 of the purchase-money was to be paid cash. As hereinbefore demonstrated, the contract he made was one wherein the $1,000 was not to be paid cash, and

4

it was not therefore such a contract as he was authorized and "directed" to make. The written contract had provisions Petty was not authorized to make, two of which are the provisions first copied in this opinion. Petty having violated his instructions and not having "closed contract of sale upon the terms" upon which he was authorized and "directed" to close one, he earned no commissions; and the court erred in not dismissing the petition on general demurrer. This is true though Harris, after the written contract between him and Petty was signed, offered the $1,000; as the duty of Petty, under his employment, was not simply to find a purchaser who would pay $1,000 cash, but also "to close contract of sale upon" certain terms, one of which was the payment of $1,000 cash, and no such contract was closed. But if it can be said that any "contract of sale" was closed by Petty, the contract closed by him was entirely different from one providing for the payment of $1,000 *cash*. The instructions to Petty evidently meant that he was not only to find a purchaser, but was to make a contract with the latter binding on him to pay the $1,000 *cash*. No contract with Harris was ever closed binding on him to pay $1,000 cash. The written contract was made May 16th, and the $1,000 was tendered July 12th. The petition in each case should have been dismissed on general demurrer.

*Judgment reversed. Beck, J., absent. The other Justices concur.*