## BROWN LOAN & ABSTRACT COMPANY *v.* WILLIS, *et al.*

1. Where the owner of land enters into a written contract accepting an offer made in writing for the purchase of the land, and the party making the offer makes a substantial payment upon the purchase-price, and where time is given for the investigation of the title and the clearing up and removal of defects therein, the owner of the property can not rescind such a trade by his own act or declaration, even after a reasonable time for compliance with his undertaking by the purchaser has elapsed, without tendering to the purchaser the money paid and accepted. But the owner under the circumstances stated, after the lapse of a reasonable time, may, upon tendering the money paid by the purchaser back to him, declare the contract at an end, and thus be relieved of its binding force; or he may have appropriate relief, under the circumstances, upon petition to the proper court.

2. Where an owner of land and a proposed purchaser entered into a contract for a sale and purchase of the land, and where with notice of the

existence of such contract a third person purchased the land, taking a bond for title, such latter purchaser took subject to the equities of the former purchaser.

3. Under the evidence the court erred in not granting an interlocutory injunction, thereby preserving the status until the final trial, when the rights of the complainant to the equitable relief sought can be determined and adjudicated.

No. 1663. APRIL 15, 1920.

Petition for injunction. Before Judge Graham. Pulaski superior court. September 10, 1919.

*John R. L. Smith* and *Grady C. Harris,* for plaintiff.

*Hamilton McWhorter, Hall & Grice, Etheridge & Sams, Chas. J. Bloch,* and *H. E. Coates,* for defendants.

BECK, P. J. Brown Loan and Abstract Company (hereinafter called the Brown Company, and the plaintiff) brought a petition against Mrs. Pauline Rudich, I. A. Willis, and certain other parties, seeking injunction, a decree for specific performance, and other equitable relief. Upon interlocutory hearing the court refused an injunction, and the plaintiff sued out its bill of exceptions to the Supreme Court.

1. The plaintiff bases its claim of right to the relief sought upon a written contract for the sale and purchase of a tract of land of which Mrs. Rudich was the owner, and upon negotiations between the parties to the contract with reference to the subject-matter of the same. The contract, omitting the description of the tract of land, is as follows:

"The undersigned hereby agrees to buy through Turman & Calhoun, Agents, the following described property, to wit: . . for the sum of twenty-thousand ($20,000) dollars, to be paid as follows: $6,000 cash, assume loan of $6,000 at 8% now on property, with interest from date of sale, $4,000 on or before December 1, 1919, and $4,000 on or before December 1, 1920, which two last-named deferred payments bear interest at the rate of 7% payable annually. It is agreed that the vendor shall furnish good and marketable title to said property, and purchaser shall have a reasonable time in which to investigate the same. In the event the title is objected to, the vendor shall be furnished with a written statement of all objections and be allowed a reasonable time thereafter in which to furnish valid title. It is agreed that such papers as may be legally necessary to carry out the terms of this

contract shall be executed and delivered by the parties at interest as soon as the validity of the title to said property has been established.

"Special Stipulations. It being agreed that this trade is being made subject to examination of title. Should there be found any defects or uncancelled liens which might interfere with giving a good negotiable title, a list of same will be furnished by the purchaser to the seller, and reasonable length of time allowed in which to clear and remove same.

"This proposition is open for acceptance until the end of the 7th day of December, 1918.

[Signed] Brown Loan & Abstract Co., by W. L. Brown, Prest.

Eastman, Ga.

"Conditional Earnest Money Receipt. Received of Brown Loan & Abstract Co. the sum of five hundred ($500) dollars as earnest money and part payment of purchase-price of property, as described in the above copy of original proposition. Said earnest money is to remain with Turman & Calhoun during the term of said proposition, and is subject to the acceptance by the owner of said proposition, and is to be returned to purchaser in the event proposition is declined. This the 3rd day of December, 1918.

[Signed] Mrs. Pauline Rudich, by H. Rudich, Agt.

"I hereby acknowledge receipt of the above amount of earnest money, and ratify the within contract. This March 21, 1919.

[Signed] Mrs. Pauline Rudich."

It will be observed that this contract may be divided into three parts. The first is an offer by the plaintiff to buy the land, with certain special stipulations annexed; the next part is the receipt of $500 paid as earnest money and part payment of the purchase-price of the property; and the concluding portion of the contract is signed by Mrs. Rudich herself, and is an acknowledgment of the receipt of the earnest money, and contains an express ratification of the contract. The offer first made was open for acceptance until the 7th day of December, 1918. But there were subsequent negotiations, and the offer remained open; the receipt for the part payment continued outstanding; and the ratification of the contract was signed by Mrs. Rudich on March 21, 1919. This writing, or these writings taken together, constitute a contract for the sale of the land in question. It provided

for the examination, consideration, clearing up or removal of defects in the title, so that the vendor might be able to furnish good and marketable title to the property which the plaintiff had proposed to buy. That instrument, after the signature of Mrs. Rudich was attached to the clause ratifying the contract, was no longer a mere offer to buy nor an option, but it became a binding contract (subject, of course, to certain conditions in it as to the investigation and removal of defects in the title) for the sale and purchase of the land comprised in the instrument. The plaintiff could not withdraw the offer, and Mrs. Rudich could not refuse to perform her undertaking. It is urged in the brief of counsel for defendants in error that the written instrument is an option to purchase land; and that if the written acknowledgment of the receipt of the amount paid by the plaintiff and the ratification of the contract signed on March 21, 1919, by Mrs. Rudich, should be held to extend the option, it only extended it for a reasonable time, as it fixed no time limit; and that consequently, under the evidence in the case, it was for the trial judge to say, upon conflicting evidence, whether or not a reasonable time for the extension of the option had expired; that the judge was authorized to find that it had expired before the 27th of June, 1919; and that consequently the execution of a bond for title by Mrs. Rudich to another party, who is one of the defendants in this case, was not a breach of her contract, but that it was executed in the exercise of the right which remained in her after the expiration of a reasonable time from the giving of the option. But, as we have indicated above, these views of counsel for the defendants are not coincident with ours, after a careful consideration of the contract. The written contract, when Mrs. Rudich ratified it on the 21st of March, 1919, was a binding contract of sale and purchase. Omitting the stipulations as to having time to investigate and clear up defects in the title, the contract could be summed up in a few words, and amounts to an offer by the Brown Company to pay an agreed sum for the described property, a payment of $500 of the purchase-price, and a written acceptance of the offer by Mrs. Rudich, the owner. The written offer made by the plaintiff became, upon written acceptance by the owner, binding upon both parties. It is said by counsel for the defendants that under the contract the Brown Company was

not given an indefinite period in which to comply with the contract; that the only time it was given at all was reasonable time in which to satisfy itself as to title, and not time in which to pay over the money; and that as no date was fixed for this the law would supply the omitted term of the contract and would read into it the provision for a "reasonable time." And numerous decisions are cited by counsel laying down and elaborating the doctrine, that, where an agreement is silent as to the time within which an act is to be begun or completed, the law implies that a reasonable time is to be allowed therefor; and that what is a reasonable time is a matter of fact to be determined by a jury under all the circumstances of the case; and that in a hearing like that had before the trial judge, an interlocutory hearing, the question of fact is to be determined by the judge.

We have not reached the same conclusion in this case as the counsel who urge the cases cited as authority here; but we do not in any way impinge upon the doctrine of those cases just referred to. Nor do we deny that the question of reasonable time was to some extent involved in this case. But the expiration of a reasonable time after the negotiations were entered upon and after the alleged defects in the title were cleared up did not authorize Mrs. Rudich, of her own volition and without reference to the status of the plaintiff as a party to the contract for the sale of the land, simply to declare the contract at an end and then to execute another contract with other parties for the sale of the land, as if she had not executed the contract to sell to the Brown Company. The negotiations with reference to this trade and the correspondence between the plaintiff and Mrs. Rudich's agents, Turman & Calhoun, who conducted the negotiations for Mrs. Rudich, continued through several months; evidently for a while in perfect good faith, each trying to meet the requirements of the other, one making bona fide objections to certain defects in the title, and the other, with equal bona fides, endeavoring to remove those objections. And it may be conceded that towards the close of the correspondence between Turman & Calhoun and W. L. Brown, who conducted the negotiations and the correspondence for the Brown Company, it began to appear that Brown was not able, even after his objections to the title had been removed, to comply with his undertaking as to the payment of the money.

It seems quite clear that in the month of May or the first part
of June all objections to the title had been cleared up and the
time for the payment of the money and the closing of the con-
tract had arrived.  It may be conceded also that Brown then be-
gan to make excuses and to employ what seems, upon the face of
the correspondence, dilatory tactics.  It is possible that counsel for
the defendants are authorized to complain that at this period in
the progress of the negotiations the plaintiff was "playing with
the contract."  We say that all this may be conceded for the sake
of the argument.  Nevertheless the indestructible fact remains, that
there was still outstanding a contract for the sale and purchase
of the land between Mrs. Rudich and the Brown Company.  If, as
urged by the defendants, a reasonable time for performance on
Brown's part had elapsed, the mere lapse of this time did not
destroy the contract, but it would have given to Mrs. Rudich the
right to terminate the contract — to remove that fact which
stood in the way of her conveying this land to a third party.  If
the reasonable time had elapsed, she could have tendered back the
money that had been paid on the purchase-price and declared the
contract at an end.  This might have effected a rescission.  Or she
might have had recourse to the proper court to have rescission of
the contract declared.  In a petition to a court of equity she
might have shown the lapse of a reasonable time and the fact
that the plaintiff was pursuing dilatory tactics, and have asked
that a rescission be decreed upon her repaying the earnest money,
or she might possibly even have alleged reasons why she could
not repay the money, and have asked the court to declare the
contract at an end and that the plaintiff be given a judgment
for the amount it had paid, and that such judgment be a lien
upon the property.  Such are some of the remedies which were
open to Mrs. Rudich had she desired to end the contract.  Powell
on Actions for Land, 502 et seq; *Buck* v. *Duvall,* 9 *Ga. App.* 656
(72 S. E. 44) ; *Bryant* v. *Booze,* 55 *Ga.* 438.  But, without taking
some such steps as we have indicated in the courts, Mrs. Rudich
could not by her own action, or after declaration of her inten-
tions made to Brown, destroy the contract in question or impair
its validity, unless at the time of declaring the contract at an end
she tendered back the part payment of the purchase-price which
had been paid.

We have given careful weight to a letter written by the plaintiff on the 26th day of June, the day before Mrs. Rudich executed the bond for title to Willis, which was a breach of her contract unless it had been terminated before that time. This letter last referred to is written to the real-estate agents, Turman & Calhoun, with whom the negotiations had been conducted. In it Brown, the president of the plaintiff company, after having failed to keep an engagement on the 17th and on the 20th of June, appointed to carry out and complete the contract, made certain excuses for his failure to meet Turman as he had engaged to do for the purpose of concluding the transaction between them involving the purchase of this land. Brown stated in this letter that he did not get the money which had been promised his company, and with which it had expected to make the cash payments according to the terms of the contract. He stated further that the money with which his company expected to make the payments had for a long time remained in a certain bank, and that the person to whom the money belonged, and who had agreed to furnish the same to Brown, had, in consequence of the long delay in bringing the matter to a satisfactory conclusion, invested the money in cotton, and that he was then, for reasons set out at length in the letter, unwilling to withdraw the money from that investment to let Brown have it so that he could conclude the trade. In the same communication he dealt at length with several matters that are apparently irrelevant to the subject of the trade for the land, and pointed out the difficulty of borrowing money from the banks, because of the fact that they had so much cotton on hand which they were carrying for their customers. He expressed the opinion that the condition just mentioned would not last longer than thirty to sixty days, stated that he wished to secure by personal indorsement a note for the balance of the cash payment that was to be made under the contract, suggested to the agents the apparent advisability of accepting his suggestion, and pointed out the advantages they would have by taking a note for the balance of the cash payment specified in the contract.

We have given the contents of this letter careful consideration, in order to decide whether or not it evinced such an intention on the part of the plaintiff to abandon the contract as made and

to substitute therefor such an entirely new contract as would authorize the defendants' claim that the plaintiff had itself ended the contract, or at least placed itself in such a position that Mrs. Rudich might declare the contract rescinded and terminated. After careful consideration we have concluded that this letter did not put an end to the contract, without some action being taken upon it by Mrs. Rudich herself and communicated to the plaintiff. Moreover, there is nothing to show that Mrs. Rudich or her agents had received this letter when she declared the contract to be at an end; because, on the date of this letter from Brown, Turman & Calhoun wrote Brown declaring the contract at an end. Both of these letters are dated June 26th, and they are apparently without reference to the contents of each other, though there is a suggestion they followed a conversation, whether by telephone or not we do not know, between Brown and Mrs. Rudich's agents, Turman & Calhoun.

2. On the 27th of June, 1919, the day after the letter to which we have made extended reference was written, Mrs. Rudich executed a bond for title to the land in controversy to Willis, one of the parties defendant; and Willis contends that, having paid a substantial part of the purchase-money, he was an innocent purchaser, not having notice of the Brown Company's equities in the land. The facts of the case do not bear him out in this contention. While the bond for title is made to Willis individually, the other parties defendant in this case were jointly interested with him in the purchase. They entered into an agreement with Willis to make the purchase of the land, there being stipulation as to the interest of each. This agreement made them either partners or a form of association in the nature of a partnership for the purchase of the land. It may be true that there can be no partnership in land, but a partnership or an association in the nature of a partnership may be formed for. the purchase of land, and though the partners become tenants in common after they are vested with title, we think notice to one would be notice to the others of matters affecting the title. But even if this were not true, Willis had an attorney at law to look into the matter of the title, and this attorney came to Atlanta and talked with Turman & Calhoun, the agents through whom the negotiations for the sale of the land by Mrs. Rudich to the Brown Company

were conducted. This attorney knew of the existence of the trade between Mrs. Rudich and Brown. He may not have known of the exact character of the trade, but he knew that there had been an agreement between Mrs. Rudich and the Brown Company; and though he might have concluded that that trade did not affect the title and interest of another purchaser, he was as a matter of fact put upon notice of all the essential facts, and could easily, by inquiry, have ascertained the exact nature of the transaction. This attorney saw most of the correspondence between Turman & Calhoun and Brown for the Brown Company. He saw a copy of the contract of the sale of the land, and, as stated above, he saw a great part of the correspondence "down to about June 24th or 25th." Certainly this was ample notice to the attorney at law. As to the scope of his employment, Willis, testified: "I employed him for an attorney at law to represent me in this matter in the way of everything. I took his recommendation. I did not make any examination of title. I guess he made one. . . He told me the titles were all right after he came back from Atlanta. I don't know whether he examined the titles in Atlanta. He found sufficient impression up there for him to make a recommendation that the titles were all right." It seems that there can be no question that Willis was put upon notice of the contract; that is, as it existed at one time; and knowing that it existed at one time, his clients can not be held to be innocent purchasers if they assumed that the contract was terminated or took the word of any party other than Brown, or were not misled by anything that Brown did or said.

But even if these parties had not had notice, it could not be held that they occupied the favorite position of an innocent purchaser without notice. They had paid a part of the purchase-money and had a bond for title. If they had had no notice of Brown's equities, it was a case of one equity against another, and the prior equity in point of time was the superior equity. If as a matter of fact Willis, or his associates or transferees, had paid a part of the purchase-money without notice of the equities of the Brown Company, it would then become a question whether or not, under proper pleadings, they might obtain a judgment for the money innocently paid over.

3. It appears that several hundred acres of land are covered with valuable timber, and certain of the defendants are cutting and removing this timber. That being the case, the plaintiffs were entitled to an injunction to prevent the destruction of the substance of the freehold. It is unnecessary to cite authorities upon this proposition, which has been discussed in several cases decided by this court of comparatively recent date. We think, therefore, the court erred, under the evidence, in refusing the injunction, thereby preserving the status quo until the final trial of the case, when the rights of the plaintiff, under all the evidence and circumstances of the case, to the equitable relief of specific performance upon compliance with the terms of the contract can be finally adjudicated.

*Judgment reversed. All the Justices concur, except Gilbert, J., absent for providential cause.*