## CARR *et al. v.* RAWLINGS.

1. Under the option contract the optionee had the right to buy back the one-half interest which he therein agreed to sell to the optionor on April 26, 1923, on performance of the terms therein imposed on him; but he could not exercise this right prior to that date, until which time the optionor had the right to sell the property and defeat such right.

2. An oral election of the optionee is sufficient to charge the optionor, who has subscribed the option, but is not sufficient, at the suit of the optionor, to charge the optionee, who has not subscribed any written instrument evidencing his election.

3. It takes both proper acceptance or election, and performance of the conditions and terms of such option by the optionee, or an offer by him to perform them, within the time limit of the option, to entitle the optionee to specific performance of the contract of sale.

4. The unconditional notice by the holder of a written option to buy land, which is supported by a valuable consideration, to the other party, that the former has elected to purchase the property at the price and upon the terms stated in the option contract, converts the option contract into a contract of sale which is enforceable by the optionee against the optionor or his vendee with notice of the rights of the optionee.

5. Such election or notice does not enlarge the rights of the optionee under the option contract, nor lessen those of the optionor.

6. Under the option contract the optionor had the right to sell this property on or before April 26, 1923, just as if such option did not exist; and the sale of the property therein described as a whole, by the optionor prior to said date, would defeat the right of the optionee to rebuy his former half interest therein.

7. The provision in the option contract giving to the optionor "all rights and privileges to sell" this property as a whole authorized the optionor to sell the same in the manner set out in the written contract of sale between him and his vendee; and such sale defeated the right of the optionee to rebuy his former undivided half interest in the premises in dispute.

No. 4301. July 22, 1924.

Injunction. Before Judge Hutcheson. DeKalb superior court. March 3, 1924.

*Dodd & Dodd* and *Candler, Thomson & Hirsch,* for plaintiffs in error.

*L. C. Hopkins* and *A. H. Bancker,* contra.

Hines, J. On October 24, 1922, Rawlings and Carr were the joint owners of the real estate hereinafter referred to. On that day the following contract was entered into between them, to wit:

"Atlanta, Ga., October 24, 1922.

"Mr. W. F. Rawlings, Atlanta, Ga.

"Dear Sir: After considering your verbal proposition, beg to

advise that I am willing to accept the same, and as follows is my understanding of your proposition:

"You agree to sell me your equity in the one-half undivided interest in property located at the corner of West Peachtree Street and Baltimore Place, known as 160 and 162 West Peachtree Street which we now own jointly. I am to pay you, upon approval of title, four thousand dollars ($4,000.00) in cash and assume your one-half of note which was due on April 26, 1922, and which was extended for you by Mr. Robert Lee Avary until October 26th. It is understood that in purchasing your one-half interest you are to have the option of buying back your one-half interest on April 26, 1923, on the same basis sold, provided that you on the same date pay one half of the amount due on the property on that date. It is also further agreed that I am to have all rights and privileges to improve, lease, or sell the property as a whole until you have exercised your option, just as though this option did not exist. It is also understood that upon exercising of your option I am to be paid an interest at the rate of 7% on whatever amount you are then due me, including one half of taxes, and the cost of any improvements or expenditures incurred by me in the meantime on this property, and 7% interest on same.

"Yours very truly, H. J. Carr.

"The above and foregoing is a correct statement of our agreement on the West Peachtree Street property and the same is acceptable to me.  W. F. Rawlings."

On October 27, 1922, Rawlings conveyed, by his warranty deed, to Carr an undivided half interest in this property, the recited consideration being $60,000. On April 23, 1923, Rawlings notified Carr that he was going to exercise his option under the above contract, and buy back the property therein described. Carr met with Rawlings' attorney, who was acting under a duly executed power of attorney for Rawlings, and they figured out and agreed upon the amount which would be due Carr by Rawlings on April 26, 1923. On April 25, 1923, Carr offered to sell this property to Candler, and showed him the contract between Carr and Rawlings above set out. Candler asked his attorney whether Carr had the right to sell this property, and his attorney advised that he

had such right. Carr and Candler signed the following document, to wit:

"Atlanta, Ga., April 25, 1923.

"Contract for Sale of Real Estate.

"Ten ($10.00) dollars received of Asa G. Candler Jr., as part purchase-money on the following described property: A lot on the southwest corner of West Peachtree Street and Baltimore Place, known as 160-162 West Peachtree Street, which I have this day sold to the said Asa G. Candler Jr., above named, subject to approval of title being good or made good within a reasonable time, for the sum of sixty-five thousand ($65,000.00) dollars, to be paid in cash.          H. J. Carr.

"The above is hereby accepted.          Asa G. Candler Jr."

The consideration of $10, recited in the above instrument, was not paid by Candler. On April 26, 1923, before any other papers were executed and passed between Carr and Candler, the attorney for Rawlings tendered to Carr unconditionally, in lawful money, the sum of $10,389.83, the same being the full amount which Rawlings was to pay to Carr on that day under his option to rebuy said property. At the time of making this tender the attorney for Rawlings had in actual cash the additional sum which was to be paid by Rawlings on the amount due on the property on that date, and which is referred to in the third paragraph of the contract between Rawlings and Carr; and stated to Carr that he was prepared to make this payment. Carr refused this tender, on the sole ground that he had made a contract of sale of this property the day before to Candler.

Rawlings on the same day filed suit against Carr and Candler, seeking specific performance of the above contract between him and Carr, conveyance of the property by Carr to him, cancellation of the contract between Carr and Candler, and an injunction preventing Carr from conveying the property to Candler. This suit was filed and served before any paper passed between Carr and Candler, other than the executory contract of sale above set out. Both Carr and Candler were served with this suit, and the temporary restraining order which issued on it. On November 15, 1923, this suit was dismissed for want of prosecution. Carr immediately conveyed the property to Candler. At once Rawlings filed his petition, setting up the above facts, and seeking to enjoin

Carr and Candler from conveying said property to anybody else, or altering the existing status thereof, to have all papers which had passed between them, including the deed from Carr to Candler, cancelled as clouds upon his title, to have the legal title to a half interest in said property decreed to be in him, that Carr be decreed to be entitled to receive from him the money tendered as above set out, that Carr make to him a deed to said one-half interest in said property; and, in the event it should develop that he cannot have said equitable relief, that he have judgment against the defendants and each of them for $15,654, this sum being the difference between the value of said one-half interest and the amount which he was to pay for said interest under the contract between him and Carr. After hearing the application for injunction, the trial judge granted an interlocutory injunction as prayed; and to this judgment Carr excepted and assigned error thereon, on the grounds: (*a*) that the first suit brought by plaintiff against defendant was dismissed for want of prosecution, and under the evidence plaintiff was guilty of negligence, for which reason he was not entitled to again invoke the drastic remedy of injunction against defendants under the same state of facts and cause of action; (*b*) that the petition does not allege that defendants, or either of them, are insolvent and unable to respond to the plaintiff in damages; (*c*) that under the contract between Rawlings and Carr the latter had the right, on any date prior to April 26, 1923, to make the contract which he made with Candler; (*d*) that the petition does not show any right of action in plaintiff against defendants or either of them, because both defendants acted within their rights, and the contract between them was a valid and binding contract and such as Carr would have power to make under the contract between him and Rawlings; (*e*) that under the provision in the contract between Rawlings and Carr, under which Carr was "to have all rights and privileges to improve, lease, or sell the property as a whole until you [Rawlings] have exercised your option, just as though this option did not exist," Carr was authorized to make the contract with Candler for the purchase of Rawlings' former interest in this property; and (*f*) that under said contract Carr had the right to make an executory sale of this property.

1. It first becomes necessary to construe the above contract be-

tween Rawlings and Carr, and to determine the respective rights of the parties thereto. In the sale of his one-half interest in this property by Rawlings to Carr, and in its purchase by the latter from the former, it was their express understanding and agreement, as is plainly evidenced by the contract between them, that Rawlings was to have the option of buying back his half interest in the property on April 26, 1923, not before nor later than said date, on the same basis as he sold it to Carr, and upon the payment by Rawlings of one half of the amount due on the property on that day. If nothing further appeared, and this was the sole stipulation upon this subject, Rawlings had the undoubted right, on April 26, 1923, to rebuy his former half interest by complying with the above terms. But this contract contains another provision, limiting the right of Rawlings to repurchase this half interest. This provision stipulates that Carr is to have all rights and privileges "to improve, lease, or sell the property as a whole, until you [Rawlings] have exercised your option, just as though this option did not exist." What were the rights of Carr under this provision? Clearly he had the right to improve, lease, or sell this real estate as a whole up to April 26, 1923, and until Rawlings exercised his right under the option to rebuy, "just as though this option did not exist." He could sell this real estate as a whole up to that date, and at any time before Rawlings exercised his right to repurchase the half interest therein which he had previously conveyed to Carr; and such sale would defeat the right of Rawlings to repurchase this undivided half interest therein. We think this is the plain meaning of this provision of the contract, and is the proper construction to be placed thereon. We do not think that the language, that Carr was to have the right to sell this property until Rawlings exercised his option, gave to Rawlings the right to rebuy his former half interest in this property before the above date, unless we can construe his notice to Carr of his intention to rebuy this interest as such exercise of his option as ipso facto defeated the reserved right of Carr to sell. To construe the option contract otherwise would put it in the power of Rawlings, immediately or at any time, to defeat entirely Carr's right to sell this property. If the oral election of Rawlings to exercise his option rights, and his oral notice to Carr of such intention, were effective to fix Rawlings' right to rebuy this interest,

and to defeat Carr's right to sell this property, then Rawlings could, immediately upon the execution of the option contract, make an oral election and give oral notice of such election to Carr; and in this manner at once terminate Carr's right to sell, while Rawlings could not be compelled to purchase and pay for this interest, because, under the statute of frauds, he would not be bound because he had signed no memorandum in writing, while Carr was bound by the option contract which he had signed. An oral election by the optionee is sufficient to charge the optionor who has subscribed the option; but it is not sufficient, at the suit of the optionor, to charge the optionee who has not subscribed any written evidence of his election. *Fraser* v. *Jarrett,* 153 *Ga.* 441 (112 S. E. 487) ; James, Option Contracts, §§ 416, 671. It takes both proper acceptance or election within the time specified in an option to purchase land and performance of the conditions and terms of such option, or an offer to perform them, to change the option into a contract binding both parties. 39 Cyc. 1243. So we are of the opinion that Rawlings had the right to rebuy this half interest in this property on April 26, 1923, and not before that date; and that his right to repurchase this interest was subject to be defeated by the sale of this property as a whole by Carr before said date and before the exercise by Rawlings of his option to rebuy this interest.

2. This brings us to consider the question whether the giving of notice by Rawlings to Carr of his intention to repurchase this property within the time limit of the option, before Carr sold to Candler, and before the above paper was made, was such an exercise of his right of repurchase as would prevent Carr from selling the same before the expiration of such time. An unconditional notice by the holder of a written option to buy land, which is supported by a valuable consideration, to the other party, that the former has elected to purchase the property at the price and upon the terms stated in the option contract, converts the option contract into a contract of sale, which is enforceable by the optionee against the optionor or his vendee with notice of the rights of the optionee. *Black* v. *Maddox,* 104 *Ga.* 157 (30 S. E. 723). An option to another to buy land, when in writing and signed by the optionor, is in the nature of a continuing offer to sell; and when the optionee gives to the optionor timely notice of his in-

tention to exercise his right to purchase, a contract of sale between the parties becomes complete, which is enforceable against the optionor by the optionee. *Snead* v. *Wood,* 24 *Ga. App.* 210 (100 S. E. 714) ; Rheingans *v.* Smith, 161 Cal. 362 (119 Pac. 494, Ann. Cas. 1913B, 1140) ; Smith *v.* Bangham, 156 Cal. 359 (104 Pac. 689, 28 L. R. A. (N. S.) 522) ; Brown *v.* Slee, 103 U. S. 828 (26 L. ed. 618) ; Willard *v.* Taylor, 75 U. S. 557 (19 L. ed. 501). The effect of a sufficient and timely election and notice is to convert the option into a binding promise on the part of the optionor to convey. James on Options, § 871. But such election and notice do not enlarge the rights of the optionee, nor lessen those of the optionor. If the option gives to the optionee an unconditional right to purchase, then the optionor would be under an unconditional obligation to convey to the optionee upon his compliance with the terms of the contract, when the option was metamorphosed into a contract of sale. If Rawlings had only a conditional right to repurchase under the option; that is, the right to rebuy, if Carr had not sold this property before April 26, 1923, then he had only the same right when the option became a contract of sale. Under the contract of sale, as under the option contract, Rawlings had the right to rebuy, only in the event that Carr had not sold the property by the above date. Timely election and notice by Rawlings to Carr of the former's intention to rebuy did not destroy Carr's right to sell up to April 26, 1923.

3. The real and controlling question in this case is, whether Carr made such a sale of this property on April 25, 1923, as was contemplated and provided for in this provision of the option contract. Does the paper which passed between Carr and Candler on April 25, 1923, evidence such a sale? It is earnestly insisted that the reservation to Carr, in the contract between him and Rawlings, of the right to sell this real estate as a whole did not give him the right to make the contract entered into between him and Candler. It is urged that a sale by Carr, in order to defeat the rights of Rawlings under his option, must be a complete, executed contract of sale. The contention of Rawlings is that the transaction between Carr and Candler was not a sale, and not even a contract of sale. On the contrary, his position is that the paper which passed between Carr and Candler was both conditional and inchoate, and merely gave to Candler the right to buy this prop-

40

erty "subject to approval of title;" and that until the title was approved Candler was not bound to take the property, and Carr was not bound to deliver it. On the part of Carr it is insisted, that the sale contemplated by this provision of the option contract does not necessarily mean a completed sale with full payment of the purchase-money and conveyance of title; but that on the contrary the language of this provision is broad enough to include an executory sale, or a conditional sale, or any other kind of sale, evidenced by such writing as would entitle the buyer to specific performance of the contract of sale against the seller. It is urged in behalf of Carr, that the terms of this provision of the option contract are broad enough to include a sale on credit, with none of the purchase-price paid, or a sale for part cash and part on time. In other words, it is insisted that the word "sale" is a broader term than consummated sale, completed sale, executory sale, or conditional sale; but includes every possible kind of sale. So this brings us to the determination of the meaning of the language, "all rights and privileges to sell," embraced in the above provision of the option contract.

Does this provision mean that Carr had only the right to make a completed sale, whereby the full purchase-price was actually paid and the title to the property was formally conveyed by Carr to the purchaser? We do not think that the language of this provision should be confined to this narrow and restricted meaning, but that a broader significance should be given to it. It is well to bear in mind, in examining the authorities on this subject, that the word *sale* is ordinarily applicable to sales of personalty, and to that species of personalty which is denominated *goods*. A sale has often been defined as a "transfer of the absolute or general property in a thing for money, or something of value." This court has defined a sale as follows: "A sale is a transmutation of property from one man to another, in consideration of some price or recompense in value." *Woodward* v. *Solomon, 7 Ga.* 246, 252; *Cain* v. *Ligon, 71 Ga.* 692 (51 Am. R. 281). It is insisted by counsel for Rawlings, that the right of Carr to sell, under this option contract, must be a sale which comes within this definition, and must have been a sale which had been finished and completed before April 26, 1923. As stated above, we think the language, "all rights and privileges to improve, lease, or sell the property

as a whole," has a broader meaning than the right to make a sale only in the sense of that word as above defined. We think Carr reserved to himself the right to make an executed or executory sale, and to employ the usual means and methods by which real estate is sold in this State. In other words, we think he had, under this provision, the right to make an executory sale, or a sale for cash or on credit, or a sale by any of the well-recognized methods used in the transfer of real estate. The reservation of all rights to sell by Carr includes a sale of the property in the strict sense, and an agreement to sell by which he was bound to convey upon the buyer complying with the terms and conditions of such agreement, which is the secondary meaning of this term. The transaction between Carr and Candler imposed a binding obligation upon Carr to convey this property to Candler, if the latter approved the title, or if Carr made the title good within a reasonable time. "Under such circumstances the sale was inchoate, but would become binding" upon Carr if Candler, within a reasonable time, approved the title; and a court of equity under such circumstances would decree a specific performance of the contract of sale. *Manning* v. *Sams,* 143 *Ga.* 205 (84 S. E. 451). In the ordinary and popular meaning of the term, as well as under its legal signification, the contract between Carr and Candler was a sale of this property, and, as such, falls among the "rights and privileges to sell this property as a whole," reserved by Carr in his option contract. "The substance of the sale is the agreement to sell and its acceptance." N. & W. R. Co. *v.* Sims, 191 U. S. 447. The instrument between Carr and Candler was a binding contract for the sale and purchase of the land therein described, and Carr could not withdraw therefrom. *Brown Loan &c. Co.* v. *Willis,* 150 *Ga.* 122 (102 S. E. 814).

There is nothing to the contrary of the above holdings in *Larned* v. *Wentworth,* 114 *Ga.* 208 (39 S. E. 855), and *Van Winkle* v. *Harris,* 137 *Ga.* 43 (72 S. E. 424), in which this court held that agents who were employed by their principals to sell lands upon certain specific terms, but who made sales upon other terms, exceeded their authority, and that for this reason their principals were not bound.

This being so, Rawlings was not entitled to rebuy a half interest in this property on April 26, 1923; and his petition failed to set

out a cause of action, for which reason the trial judge erred in granting an interlocutory injunction.

*Judgment reversed. All the Justices concur.*