ANSBACHER-SIEGLE CORPORATION, APPELLANT, V. MILLER CHEMICAL COMPANY, APPELLEE.

288 N. W. 538

FILED NOVEMBER 17, 1939. No. 30624.

*Paul I. Manhart, M. J. Buckley* and *Levin, Rosmarin & Schwartz,* for appellant.

*Herbert T. White, contra.*

Heard before SIMMONS, C. J., EBERLY, PAINE, CARTER, MESSMORE and JOHNSEN, JJ.

CARTER, J.

This action was brought by the plaintiff to recover $1,873.74 for goods sold and delivered to the defendant. The defendant counterclaimed for damages for breach of a contract making the defendant a sales and distributing agent of plaintiff's products in a specified territory. The verdict and judgment were for defendant in the sum of $1,139.60, and plaintiff appeals.

The undisputed evidence shows that goods belonging to plaintiff were placed with defendant with the understanding that they were to be paid for at jobbers' prices as they were sold. At the time of trial defendant had sold goods belonging to plaintiff for which the sum of $860.40 was owing to the plaintiff. Defendant had on hand goods of the value of $733.32 belonging to plaintiff. Defendant offered to confess judgment for $860.40, and tendered back the remaining goods in open court. The trial court instructed

the jury to find that plaintiff was entitled to a judgment for $860.40 on its petition. Under the state of the record the trial court properly instructed the jury in this respect, there being no controverted issue of fact for the jury to determine in connection therewith. The only issues to be determined on this appeal, therefore, are those raised by defendant's counterclaim.

The record discloses that plaintiff was engaged in the manufacture and sale of insecticides, fungicides and other chemical products. The defendant was a jobber of similar products in Omaha. In 1931 the defendant entered into an oral agreement with the plaintiff by which it was agreed that defendant would purchase at least one car-load of insecticides from the plaintiff each year and the plaintiff would, in addition thereto, store another car-load of insecticides in defendant's warehouse to be paid for by defendant when and if taken from the warehouse stock. Defendant further agreed to close out all competing lines of insecticides and sell only those of the plaintiff. This oral agreement was carried out and renewed from year to year until January 22, 1936, when a written agreement was entered into, making the defendant corporation a sales agency of plaintiff. A few days later the president of the defendant company returned the written contract to the western representative of the plaintiff company. It is the contention of defendant that the contract was returned at the request of plaintiff's representative upon the representation that it was not in accord with the regulations of the insecticide industry, that it was desirable to take up the written contract to avoid controversies with competitors, but that its terms would be carried out. Plaintiff contends that its representative informed defendant that unless he paid up the amount owing to plaintiff it would be impossible to continue defendant as a jobber and exclusive sales agency, that defendant refused to pay its account with plaintiff and informed plaintiff's representative that the contract would be returned. The telephone conversations, letters and circumstances surrounding the return of the written contract

were gone into in detail. The matter was clearly for the determination of the jury, and its finding thereon, favorable to defendant, will not be disturbed.

The record shows that defendant ordered a car-load of insecticides on February 3, 1936, as required by the contract. The order was never filled. Notice of the termination of the contract was not given. Agents and officers of the plaintiff corporation refused to answer defendant's letters or to answer the telephone calls of defendant's officers. Plaintiff placed its sales agency for defendant's territory with a Kansas City firm. It is for this alleged breach of contract that defendant claims damages.

The record shows that defendant was indebted to plaintiff and that the indebtedness was past due. Plaintiff contends that this was a violation of the contract which warranted its cancelation. The evidence shows that payments had been irregularly made by defendant on its running account with plaintiff over the whole four-year period of their business relationship. At the time the written contract was entered into on January 22, 1936, defendant's account was past due. No change had taken place up to the time plaintiff refused to fill defendant's order. The plaintiff, instead of acting upon the breach of contract, proceeded to enter into a new contract for the year 1936. This was a waiver of the breach. This court has said:

"Where the aggrieved party does not act upon the breach by the other of the terms of a contract, but does anything which draws on the other party to execute its agreement after default in respect to time, or which shows it is deemed a subsisting agreement after such default, it will amount to a waiver, as will also a failure to avail oneself of it at the first fit occasion and before or when the other begins, after default, to act again on the agreement." *Elson & Co. v. Beselin & Son,* 116 Neb. 729, 218 N. W. 753.

Plaintiff contends that there was no mutuality of contract and that the alleged contract was void and unenforceable for that reason. We think there was mutuality of contract. Defendant was to purchase outright one car-load

of insecticide each year, sell plaintiff's products exclusively and pay for all plaintiff's goods sold from defendant's warehouse. Plaintiff agreed to sell at jobbers' prices less specified discounts, and to give defendant a sales agency in a specified territory. Clearly, the contract was not void for want of mutuality. In *Peck-Williamson Heating & Ventilating Co. v. Miller & Harris,* 118 S. W. (Ky.) 376, the court aptly stated the rule in a similar case as follows: "It is first insisted by appellant that the writing set out above is not a contract, because of its lack of mutuality. With this contention we are unable to agree. By the terms of the contract the parties of the second part are given the exclusive sale of appellant's furnaces, furnace fittings, etc., in the city of Bowling Green and vicinity for the term of one year. The party of the first part further agrees to bill its goods to the parties of the second part at certain discounts from the price list in its catalogue. In consideration of the prices quoted and the exclusive agency, the parties of the second part agree to sell exclusively the goods manufactured by the party of the first part, and to push their sale during the term of the contract. Here we have obligations proceeding from each party to the contract, and which are capable and possible of performance. Under such circumstances there can be no doubt of the validity of the contract."

Plaintiff contends that, as the contract had no fixed period of duration, it could be revoked by the plaintiff at any time, with impunity. We cannot agree that this is the rule where an exclusive contract is accompanied by a sale of merchandise manufactured by the plaintiff which cannot be readily replaced on the open market. The plaintiff may not revoke indiscriminately, or in bad faith, or without the giving of a reasonable notice. The rule is well stated in *Elson & Co. v. Beselin & Son, supra,* as follows: "The contract of agency being indefinite as to the time it was to run, what was its duration? Where the continuation of a contract is without definite duration the law implies a reasonable time, and what is a reasonable time is to be determined from the general nature and circumstances of the case. When the

obligor has expended a substantial sum of money or value or has substantially rearranged his business, as in this case, preparatory to engaging upon the terms of agreement for the benefit of obligee, he ought, through fairness, to have a reasonable time and notice of the cancelation of the contract in order that he might have a reasonable opportunity to put his house in order. And the notice of termination should be such as to clearly convey the intention of the parties. 13 C. J. 604, sec. 630; 6 R. C. L. 896, sec. 283." The evidence in the case at bar shows that the oral agreements preceding the written contract of January 22, 1936, were from year to year. The written contract fixed no different term for the contract to run. Under this evidence we are of the opinion that it was intended that the contract should operate for at least a year. In the absence of an operative breach of its terms, we hold, under the evidence in the record, that plaintiff could not terminate the contract with impunity before the expiration of a year.

Plaintiff also alleges that the damages allowed were excessive. The record discloses that on January 22, 1936, the date the written contract was executed, defendant had many advance orders for plaintiff's products. The president of the defendant company testified that he had orders for 50,000 pounds of insecticides, while plaintiff's representative testified that on that date he was shown orders for 15,000 pounds only. The officers of the defendant company testified that they spent large sums for advertising, soliciting and attempting to substitute other insecticides for plaintiff's products. It was also shown that defendant profited from the sale of plaintiff's products in the amounts of $1,443.57 in 1932, $2,882.13 in 1933, $2,866.16 in 1934, and $3,499.48 in 1935. In addition thereto, defendant lost many valuable customers because of an unwillingness to take a substitute product. The defendant had closed out all competing lines as required by his contract. A sudden change to a competing line naturally resulted in a substantial loss of business. The foregoing evidence is competent for the jury to consider in arriving at such sum as will fairly and

adequately compensate the defendant for the loss and damage suffered by it. The measure of damages for a breach of a contract such as we have here would be such amount as would compensate the defendant for all damage or detriment proximately caused by the breach of contract, including all profits lost from the sale of the products of the plaintiff which can reasonably be proved during the life of the contract. The jury allowed defendant damages in the amount of $2,000. The evidence is sufficient to sustain the verdict and judgment and we will not, therefore, disturb it.

Plaintiff contends that defendant's cause of action cannot properly be pleaded as a counterclaim. We think the provisions of our statute, section 20-813, Comp. St. 1929, govern the situation and require us to say that defendant's counterclaim was properly maintainable as such.

We find no prejudicial error in the record. The judgment is

AFFIRMED.