448 P.2d 350

**SALT LAKE CITY, a municipal corporation, Plaintiff and Respondent,**

v.

**STATE of Utah, Defendant and Appellant. No. 11141.**

Supreme Court of Utah.

Dec. 3, 1968.

Phil L. Hansen, Atty. Gen., Dallin W. Jensen, Asst. Atty. Gen., Salt Lake City, for appellant.

Homer Holmgren, City Atty., Leon A. Halgren, Asst. City Atty., Salt Lake City, for respondent.

ELLETT, Justice:

In this matter the City obtained a declaratory judgment holding that its grant of the use of water to the Territory and State of Utah was invalid. The grant was made some 80 years ago.

At the time of the grant the City was seeking to have the State Capitol moved from Fillmore to Salt Lake City; and in order to induce the Legislature to make that change, the city fathers entered into an

agreement with leaders of the territorial government which was subsequently reduced to writing in the form of a series of documents including ordinance, statutes, and resolutions duly and regularly enacted and passed. The sequence of the written documents is as follows:

A. March 1, 1888. The City Council tendered to the Territory of Utah nearly 20 acres of land to be used and dedicated to the erection of the Capitol Buildings of the Territory or of the future State of Utah.

B. March 5, 1888. The Legislative Assembly of the Territory of Utah, by resolution, duly accepted the offer and tender of land so made and subject to the conditions set forth in the offer.

C. March 6, 1888. The City Council adopted the following resolution:

A resolution ratifying and confirming the donation by Salt Lake City of land, for the site of a Capitol Building for the Territory of Utah, Whereas the City of Salt Lake has offered and tendered to the Territory of Utah under the conditions, limitations and restrictions hereinafter named the following described lands and premises to be used and devoted to the erection of Capitol Buildings˙ for the Territory or the future State of Utah, to wit: [Description] Containing nineteen and forty six one hundredths (19⁴⁶⁄₁₀₀) acres; * * * also an additional one half interest in five (5) acres

of land, more or less, as may be necessary suitably situated on Capitol Hill, for reservoir purposes, * * *

D. May 1, 1888. An Indenture, after reciting the prior matters which had theretofore transpired, continued:

WHEREAS the said offer and tender of said lands by the City of Salt Lake to the Territory of Utah, has been accepted by the said Territory, subject to the conditions, limitations and restrictions in said offer specified and set forth; now therefore Be it Resolved by the City Council of Salt Lake City that the Mayor be and is hereby authorized to execute a deed of conveyance of the lands hereinbefore described to the Territory of Utah, subject to the conditions named.

Now therefore, in pursuance of said resolution and in consideration of the premises and of the sum of One Dollar, lawful money of the United States of America, to it in hand paid by the second part, the receipt whereof is hereby acknowledged, the said party of the first part does by these presents grant, bargain, sell, convey and confirm unto the said party of the second part, and to its successors and assigns forever all of the following described land and premises [Description].

To have and to hold, the above granted premises with the appurtenances; and every part thereof unto the said party of

the second part, its successors and assigns forever, for the erection and maintenance of the Capitol buildings of Utah Territory or the future State of Utah, and the proper appurtenances and surroundings, *including a reservoir to said Capitol buildings and grounds* and for other purposes; But this grant is made subject to and upon the following restrictions and limitations, viz.; [Emphasis added.]

That the Capitol buildings of the Territory or future State of Utah shall be erected upon said lands; That such buildings be used exclusively for Territorial or State purposes; That the portion of said land not actually devoted to buildings as aforesaid shall be improved and cultivated as a public park: That Whenever the purposes for which this grant is made shall cease to be carried out and said grounds shall cease to be used for Capitol grounds or Territorial or State purposes as herein provided, then the trust herein provided shall cease and this grant become absolutely void and of no effect and said lands revert to the grantor.

In witness whereof, the said party of the first part has caused these presents to be signed by its Mayor and attested by its corporate seal the day and year first above written.

Salt Lake City

(SEAL)     By Francis Armstrong
                   Mayor

E.   1888 Laws of Utah, Ch. XXVIII. The Territorial Legislature created a "Board of Commissioners on Capitol Grounds" to take possession and control of the land conveyed by Salt Lake City, and the sum of $25,000 was appropriated and subsequently expended in improving and beautifying the grounds for the purposes contemplated in the deed of conveyance and also to construct a reservoir in conjunction with Salt Lake City for the purpose of supplying water to the grounds and buildings erected thereon.

F.   March 13, 1890.   Ch. XXXIX, L.U. 1890, Item 52 in the amount of $10,000 was approved as follows:

For the improvement of capitol grounds to be drawn by and expended under the supervision of the capitol commission * * * $10,000.00.

*Provided, that the above amount be expended on condition that Salt Lake City furnish, free of charge sufficient water for said grounds and for the building proposed to be erected thereon.*[1]   [Emphasis added.]

G.   April 29, 1890.   The Board of Commissioners on Capitol Grounds wrote a letter to the Mayor and City Council of Salt Lake City calling attention to the fact that

1.  The funds thus appropriated were subsequently expended as provided for in the Act.

the State had spent in constructing the reservoir almost twice the amount spent by the City and requesting an adjustment. The letter further stated:

I would call your attention to the fact that the late Legislature appropriated the sum of $10,000.00 for improvement of the grounds, with the proviso that the City furnish water without charge for the grounds and any building erected thereon. *As this was specifically understood with the City when arrangements were made to begin the work, there is not much need to take note of it.* [Emphasis added.]

H. May 6, 1890. A resolution of Salt Lake City was adopted granting free use of water to the Capitol grounds as follows:

Whereas the late Legislature appropriated the sum of $10,000.00 for the improvement of the Capitol Grounds with the proviso that the City furnish water without charge for the grounds and any building erected thereon—

Be it resolved that the free use of water be granted to the Commission for the use of the Capitol Grounds and for the use of any building erected thereon—in accordance with the specific understanding with the City when arrangements were made to begin work on said grounds.

I. October 25, 1926. A written agreement was entered into by and between the Mayor of Salt Lake City and the Governor of the State of Utah as follows:

This Agreement made and entered into this 25th day of October, A.D. 1926, by and between Salt Lake City, a municipal corporation of Utah, and the State of Utah:

WHEREAS the State of Utah has acquired certain lands adjoining its present Capitol Grounds in Salt Lake City, Utah, and it is now the intention of the State of Utah to improve said land and park the same and to maintain the same as a part of the State Capitol Grounds.

NOW THEREFORE, in consideration of said improvement and the parking of said grounds, and the perpetual maintenance thereof as the State Capitol Grounds, said city does hereby agree that its *former grant* to the State of the perpetual free use of water for the Capitol Grounds, and the purposes for which it was used, shall also extend to such additional land as shall be parked, improved and maintained as a part of the Capitol Grounds of the State. [Emphasis added.]

It is understood and agreed that the State will be as economical as possible in the use of the water upon such additional land as shall be parked and improved, and will conserve the said water supply by using only a sufficient amount to preserve and maintain the beauty of the

grounds, the lawns, flowers, trees and shrubbery thereof.

IN WITNESS WHEREOF, the parties hereto have hereunto set their hands and seals the day and year first above written. Done by authority of a resolution of the Board of Commissioners of Salt Lake City, Utah.

SALT LAKE CITY, UTAH

By C. Clarence Neslen

Mayor

Accepted for the STATE OF UTAH

By Geo. H. Dern

Governor.

By this agreement the City acknowledged that it had a duty to furnish the water for the use of the Capitol Grounds and also acknowledged that it had formerly made a grant to the State of the perpetual free use of water and agreed that the grant be extended to the additional land purchased by the State and adjoining the land in the original grant, so long as the ground was to be parked and maintained as a part of the Capitol Grounds of the State.

The State kept its bargain: It did move the Capitol to Salt Lake City; it has erected buildings costing millions of dollars and has expended over one-half million dollars in landscaping the grounds; it does expend over $40,000 per year in maintaining those grounds as a public park chiefly for the use and benefit of the local citizens. The Capitol Complex is a major tourist attraction and draws some 250,000 visitors each year. It is a valuable economic asset to the City.

Now that the Capitol is securely located in Salt Lake City and is in no danger of being removed, the promises made to obtain its location here have become somewhat corroded and the City now hopes to find a loophole by which it can escape from its duty to supply the water for the Capitol Complex according to its agreements.

It now contends that the agreements were without consideration, against public policy, and ultra vires.

■■ It is clear that a city has no more right to repudiate its contracts than has a private person unless the contract deals with a governmental function. The city in selling water is engaged in a proprietary activity and not in its governmental capacity. The law is set forth in 63 C.J.S. Municipal Corporations § 973, as follows:

The rules of law pertaining to a valid contract of a municipal corporation are not different from those pertaining to any other contract; the municipality is bound by the contract to the extent that a natural person, private corporation, or other legal entity is bound by a contract entered into by him or it, especially where the contract relates to a matter not governmental in its nature.

The City also claims that Article XI, Sec. 6, of the State Constitution prevents the

City from granting the free use of water to the State. That section reads:

No municipal corporation, shall directly or indirectly, lease, sell, alien or dispose of any waterworks, water rights, or sources of water supply now, or hereafter to be owned or controlled by it; but all such waterworks, water rights and sources of water supply now owned or hereafter to be acquired by any municipal corporation, shall be preserved, maintained and operated by it for supplying its inhabitants with water at reasonable charges: Provided, That nothing herein contained shall be construed to prevent any such municipal corporation from exchanging water-rights, or sources of water supply, for other water-rights or sources of water supply of equal value, and to be devoted in like manner to the public supply of its inhabitants.

■ This section is not controlling. The City did not dispose of its waterworks, water rights, or water supply. It simply agreed upon a sufficient consideration to furnish water on named conditions without making any further charge therefor. It still owns its water rights and its waterworks. The State is not claiming any adverse rights thereto. It merely claims that so long as it maintains the Capitol in Salt Lake City and keeps the grounds parked, it should not have to pay current rates for the water which the City agreed to furnish.[2]

■ There is another reason why the constitutional provision cannot aid the City. That document was adopted some eight years after the grant was made, and since it is prospective only in its purpose and effect, it would not relate back even if the grant were of the waterworks.

■ The establishing of the Capitol in Salt Lake City was a result of many conferences of men in positions of responsibility in both the city and the territory. The arrangements had to be worked out over a period of time. Matters agreed upon had to be put in the form of resolutions, ordinances, laws and written agreements. The actual agreements reached by and between the two bodies politic must be determined from a consideration of all of the documents available together with the understanding of the parties as was manifested by what was done in connection therewith. From a consideration of all of the above, it seems clear that there were mutual promises made by the City and by the Territory; that the Territory has kept its promises fully; and that for some 75 years the City kept the promises it made. There was and is ample consideration to the City for the promise to furnish water without

2. The language of the resolution of May 6, 1890, is: "Be it resolved that the free use of water be *granted* to the Commission * * *." [Emphasis added.]

making a current charge. The agreement does not run counter to the Constitution of the State of Utah and is neither ultra vires nor against public policy.

The claims of the City are not well grounded. So long as the State maintains the Capitol in Salt Lake City and keeps the grounds parked, the City is obligated to furnish the amount of water reasonably required according to its agreements.

The judgment of the trial court is reversed with directions to enter a judgment for the State in accordance with this opinion. No costs are awarded.

CROCKETT, C. J., and CALLISTER and TUCKETT, JJ., concur.

HENRIOD, Justice (dissenting).

I dissent, believing that the contract was 1) ultra vires, 2) against public policy and 3) uncertain as to terms.

(1) There is no constitutional and very little judicial authority that sanctions municipal officers' binding their successors for public purposes to an inordinately unreasonable time in the future.[1] It seems to me that such reasonable time expired befor 80 years. The contract here was 'for a public purpose, i. e., to stimulate business, etc., and there is no indication that the Capitol would not have come to Salt Lake but for the execution of the agreement. I would affirm the trial court on the ground stated above.

(2) This contract continues in perpetuity, is improvident, therefore, and against public policy. It would be interesting to speculate on what this court would do if it had a contract before it that was executed in 1926 guaranteeing to furnish Western Airlines, or a federal agency, water, and granting a large tract of land together with perpetual care and maintenance of needed runways and buildings, the like of which exists today at Salt Lake's rapidly growing international airport—conditioned only on the airline agreement to make Salt Lake an airplane stop-off point. I am of the opinion that under such a contract the City would be broke by now.

(3) It is accepted generally that a contract, to be enforceable, must be certain as to its terms. This contract provides that water will be furnished free of charge from here to eternity and beyond—which certainly does not comport either with sensible certainty or sensible legal concepts relating to contracts. The contract is equally uncertain as to minimum or maximum amounts of water to be furnished during any special period, which size facilities are to be used, to what size building or buildings it is to be delivered, or as to how many

---

1. Rhyne, Municipal Law, Sec. 10–5, p. 261, which says "A municipal governing body may bind its successors for a *reasonable* length of time for public purposes * * *."

people or animals benefitted and whether it shall be culinary or irrigation water.

I think the distinction between "proprietary" and "governmental" authority is not quite apropos in a case like this. Such distinction generally is made where tort liability and governmental immunity are involved. Here, the City has a duty to furnish water, the life-blood of a community, to its inhabitants irrespective of private contract. It had no duty ex contractu to furnish to one segment of the city population,—the state employee,—or to furnish water for Capitol shrubbery. In the instant case, the City by contract would have to furnish water to the Capitol, even though in doing so all of the City's water resources may entirely be consumed and exhausted.

I would affirm the trial court.