2002 UT 92

**UINTAH BASIN MEDICAL CENTER,**
Plaintiff and Appellee,

v.

**Leo W. HARDY, M.D.,** Defendant and Appellant.

No. 20000501.

Supreme Court of Utah.

Aug. 30, 2002.

Blaine J. Bernard, Eric G. Maxfield, Christine T. Greenwood, E. Blaine Rawson, Salt Lake City, for plaintiff.

John P. Harrington, Joni J. Jones, Melissa H. Bailey, Salt Lake City, for defendant.

## INTRODUCTION

DURRANT, Associate Chief Justice:

¶ 1 This appeal concerns the voidability of certain government contracts. Specifically, we consider the question of when a contract entered into by a predecessor governing body is voidable by a successor governing body. Throughout the country, substantial case law has developed to distinguish between those government contracts that may be voided and those that may not be voided by a successor governing body. Various common law tests have been articulated, all designed to balance the tension between the right of a successor governing body to implement its own policies and not be bound by those of a former body, and the interest in providing some certainty to parties who contract with governing bodies. Utah courts have relied on the governmental/proprietary test, a test under which contracts involving proprietary functions and having reasonable durations are enforceable against successor governing bodies.

¶ 2 In this case, the district court granted summary judgment to a county hospital on the theory that the particular contract at issue, a contract for the provision of pathological services to the hospital by a doctor, was voidable by the hospital's governing body—its board of trustees. The district court held that the contract had been entered into by a predecessor board and thus was voidable by successor boards.

¶ 3 Because we conclude that the contract for pathological services involves a proprietary function, we remand with instructions that the district court determine whether the contract's duration was reasonable.

## BACKGROUND

¶ 4 The following facts are undisputed. On November 29, 1994, Dr. Leo Hardy entered into a contract with Uintah Basin Medical

Center ("UBMC"), a hospital owned by Duchesne County and operated by a board of trustees. Under the terms of the contract, Dr. Hardy received $400 per month for providing UBMC pathological services on a part-time basis and serving as the director of its pathology laboratory. The contract did not recite a termination date, but provided that either party could terminate the contract for "just cause" following ninety days' notice.

¶ 5 Although Dr. Hardy performed his contractual obligations satisfactorily and received no complaints from UBMC or its medical staff, on July 18, 1996, the UBMC board of trustees voted to give Dr. Hardy ninety days' notice and invite another doctor to join its medical staff as a pathologist and emergency room physician. When Dr. Hardy's termination became effective, UBMC sought a declaratory judgment that it had "just cause" to terminate the contract. Dr. Hardy counterclaimed, contending that UBMC materially breached the contract by terminating him because UBMC did not have "just cause." The district court initially denied the parties' respective motions for summary judgment, ruling that the jury would decide whether UBMC had "just cause".

¶ 6 Following this ruling, the district court accepted supplemental briefing from the parties on an issue UBMC had raised for the first time in its answer to Dr. Hardy's counterclaim: whether the contract violated common law rules against government contracts that bind successor governing bodies. After hearing from the parties, the court granted UBMC summary judgment on the ground that the contract was voidable even without " 'just cause' simply because it could not bind successor Boards." In reaching this conclusion, the district court explained, "Due to the rapid advance of science, medicine [sic] changes and needs of patients there should be no reason for such an agreement to continue into the future or be binding on successor [b]oards where the governing [b]oard is a governmental entity." Dr. Hardy appeals. Section 78–2–2(3)(j) of the Utah Code gives us appellate jurisdiction over this case. Utah Code Ann. § 78–2–2(3)(j) (Supp.2001).

## ANALYSIS

### I. STANDARD OF REVIEW

¶ 7 "In deciding whether the trial court correctly granted [summary] judgment as a matter of law, 'we give no deference to the trial court's view of the law; we review it for correctness.' " *SME Indus., Inc. v. Thompson, Ventulett, Stainback & Assocs.,* 2001 UT 54, ¶ 9, 28 P.3d 669 (quoting *Ron Case Roofing & Asphalt Paving, Inc. v. Blomquist,* 773 P.2d 1382, 1385 (Utah 1989)).

### II. RATIONALE BEHIND COMMON LAW RESTRICTIONS ON GOVERNMENT CONTRACTS THAT BIND SUCCESSOR GOVERNING BODIES

¶ 8 Before addressing Dr. Hardy's specific claims on appeal, we briefly discuss the rationale behind the common law rules regarding contracts that bind successor governing bodies.

¶ 9 Government contracts raise public policy concerns beyond those involved with private contracts. *See, e.g., Mitchell v. Chester Hous. Auth.,* 389 Pa. 314, 132 A.2d 873, 876 (1957). One such concern involves contracts that extend beyond the term of the governing body that originally entered into the contract. Such contracts, if enforced, potentially allow a former governing body to perpetuate its policies beyond its term and thereby limit a successor governing body's ability to respond to the public's changing needs. *See generally Figuly v. City of Douglas,* 853 F.Supp. 381, 384 (D.Wyo.1994).

¶ 10 While such concerns militate against enforcing a predecessor governing body's contracts against its successors, the common law also recognizes a countervailing concern: that permitting successor governing bodies to indiscriminately terminate government contracts may make private parties hesitant to contract with government entities, thereby reducing the viability of contracts as a means of solving public problems. *See Plant Food Co. v. City of Charlotte,* 214 N.C. 518, 199 S.E. 712, 714 (1938).

¶ 11 A desire to accommodate these competing concerns animates the various common law tests for determining whether a

contract should be enforced against a successor governing body. The test on which Utah courts rely is known as the governmental/proprietary test. *See Bair v. Layton City Corp.*, 6 Utah 2d 138, 147–48, 307 P.2d 895, 902 (1957); *see also Salt Lake City v. State*, 22 Utah 2d 37, 42, 448 P.2d 350, 354 (1968) (holding that contract for providing water to state capitol grounds was enforceable under the governmental/proprietary test).[1] Under the governmental/proprietary test, a contract is (1) unenforceable against successor governing bodies if it involves a governmental power or function, but (2) enforceable against successor governing bodies if it involves a proprietary power or function and is of a reasonable duration. *Bair*, 6 Utah 2d at 147–48, 307 P.2d at 902.

¶ 12 Having set forth the governmental/proprietary test, we next apply it to Dr. Hardy's contract to determine whether the contract may be validly enforced against successor hospital boards of trustees.

## III. WHETHER DR. HARDY'S CONTRACT IS ENFORCEABLE AGAINST SUCCESSOR BOARDS OF TRUSTEES

■ ¶ 13 Dr. Hardy maintains the district court erred in concluding that his contract was voidable because it bound successor boards.[2] Relying on the governmental/proprietary test, Dr. Hardy argues that his contract for pathological services involves a proprietary function and therefore was enforceable against successor

boards provided it is of a reasonable duration. We agree.

### A. Dr. Hardy's Contract Was Proprietary in Nature

¶ 14 The factors on which courts have relied to distinguish between governmental and proprietary contracts strongly support the conclusion that Dr. Hardy's contract for pathological services involves a proprietary function. First, UBMC has not demonstrated that the services Dr. Hardy provides under the contract are "indispensable to the proper functioning of government." *County Council v. SHL Systemhouse Corp.*, 60 F.Supp.2d 456, 465 (E.D.Pa.1999). To the contrary, consistent with the view that Dr. Hardy's contract did not involve functions essential to governance, Duchesne County conveyed the hospital to a non-profit organization on July 3, 2000.

¶ 15 Moreover, under the terms of the contract, Dr. Hardy merely recommended, but did not have authority to set, policies related to UBMC's pathology laboratory. The board's retention of this policymaking discretion weighs heavily in favor of deeming the contract proprietary. *See Rhode Island Student Loan Auth. v. NELS, Inc.*, 550 A.2d 624, 627 (R.I.1988) (concluding contract was proprietary because contracting party "could neither exercise discretion nor set policy in performance of its duties").

¶ 16 Accordingly, we conclude that Dr. Hardy's contract involves a proprietary function.

---

1. Citing various criticisms of the governmental/proprietary test, both parties urge us to repudiate it in favor of other common law tests. However, because the parties have failed to show that any of their suggested tests is clearly better than the governmental/proprietary test, we decline to repudiate it at this time. *See State v. Menzies*, 889 P.2d 393, 398 (Utah 1994) (noting that because of stare decisis, "[t]hose asking us to overturn prior precedent have a substantial burden of persuasion").

2. Dr. Hardy also argues that the rationale behind the common law rules does not apply (1) to appointed, staggered boards like the UBMC board of trustees, or (2) until a majority of the nine voting members of the board are replaced. These arguments are without merit. First, the rationale behind the common law rules applies to appointed, staggered governing bodies because preexisting contracts may also unduly inhibit these bodies in the performance of their public duties. *See Mitchell*, 132 A.2d at 877–78; *Piedmont Pub. Serv. Dist. v. Cowart*, 319 S.C. 124, 459 S.E.2d 876, 882 (App.1995). Second, there is inadequate support in the law for the contention that a majority turnover in the UBMC board is required before the board can challenge the contract. *See Mariano & Assocs., P.C. v. Bd. of County Comm'rs*, 737 P.2d 323, 331 (Wyo.1987) (concluding that precedent did not support argument that turnover in board was required before it could challenge validity of contract).

In addition, Dr. Hardy argues that the successor UBMC board was precluded from terminating his contract because the board earlier ratified it. Since this issue was not raised below, we decline to address it. *See Monson v. Carver*, 928 P.2d 1017, 1022 (Utah 1996).

*B. Whether Dr. Hardy's Contract Was of Reasonable Duration Depends on the Scope of the Contract's "Just Cause" Provision*

¶ 17 Under the governmental/proprietary test, Dr. Hardy's proprietary contract is enforceable if its duration was reasonable at the time the parties executed the contract. *Bair,* 6 Utah 2d at 148, 307 P.2d at 902. Whether a contract's duration is "reasonable" depends on the circumstances of each case. *See, e.g., id.,* 6 Utah 2d at 143, 148, 307 P.2d at 899, 903 (holding that a fifty-year sewage treatment contract was valid because its lengthy duration allowed city to obtain treatment facilities without undue delay and expense, and also facilitated long-term planning). Depending on the circumstances, a lengthy or indefinite contractual duration is not necessarily unreasonable. *See id.; see also Salt Lake City,* 22 Utah 2d at 42, 448 P.2d at 354 (validating contract that required city to provide free water to land as long as the land served as the state capitol grounds, noting that city derives continuing economic benefit from capitol's presence).

¶ 18 As the record has been inadequately developed on the issue of the reasonableness of the contract's duration, we remand to permit the district court to allow further development of the record and to then make this determination. On remand, as a preliminary matter, the district court should interpret the intended scope of the contract's "just cause" provision,[3] since the reasonableness of the contract's duration depends in large part on the amount of discretion this provision gives to successor boards. For example, if the "just cause" provision gives successor boards broad discretion to terminate Dr. Hardy

(e.g., to improve patient care, for fiscal considerations), the contract is more likely to be of a reasonable duration than if the "just cause" provision permitted termination only for deficient job performance. In evaluating whether the duration is reasonable, the district court may also find it useful to compare Dr. Hardy's contract to the agreements UBMC typically enters into with medical professionals. For example, UBMC's bylaws concerning its medical staff suggest that UBMC routinely enters into agreements under which the only practical durational limit is a liberally-construed "just cause" provision.[4] The extent to which the durational limitations in Dr. Hardy's contract conform to UBMC's usual practices in similar situations may factor into the district court's reasonableness assessment.

¶ 19 If the district court determines that the contract's duration is reasonable, the contract is enforceable. The court should then determine whether the UBMC board had "just cause" to terminate Dr. Hardy. On the other hand, if the district court determines that the contract's duration is unreasonable, the court should not enforce the contract.

¶ 20 The dissent maintains that a term should be implied into Dr. Hardy's contract. In support of its argument, the dissent relies on canons of construction that have been developed to aid courts in discerning the parties' intent when a contract fails to specify a duration. We reject the dissent's position for several reasons. First, and most importantly, neither party has argued in their briefs in favor of implying a term. To the contrary, both parties maintain that the contract should be evaluated as an indefinite-length contract whose duration is limited only by the "just cause" provision.[5] In ef-

---

3. *See Miller v. USAA Cas. Ins. Co.,* 2002 UT 6, ¶ 64, 44 P.3d 663 (noting that determination of scope of contractual "clause is a question of law for determination by the district court because it is a matter of contract interpretation").

4. Under UBMC's bylaws, although appointments to the medical staff are ostensibly limited to two years, staff members are reappointed unless there is "just cause." Under the bylaws, "just cause" appears to have a broad scope: for instance, the board may terminate a member of the medical staff for any reason "reasonably related to the delivery of quality patient care."

5. Dr. Hardy asserts the following in his appellate brief:

> To entice excellent physicians to move to and remain in rural areas, hospitals often add perks to the contracts, including "just cause" termination provisions, or even "lifetime" contracts.... Given the necessities of the situation, such contracts are of reasonable duration. Thus, [Dr. Hardy's contract] passes the second part of the *Bair* test....

Appellant's Br. at 21.

Despite disagreeing with Dr. Hardy on the ultimate conclusion of whether an indefinite-

fect, then, the parties have implicitly stipulated that the contract has an indefinite term.[6] Implying a term would therefore result in a contract that is contrary to the intent of either party and violate the preeminent goal of contractual interpretation (i.e., to give effect to the intent of the parties). *Buehner Block Co. v. UWC Assocs.*, 752 P.2d 892, 895 (Utah 1988). Accordingly, because the parties agree that the contract should be treated as an indefinite-length contract, there is no need to rely on canons of construction for resolving ambiguities over whether the parties intended the contract be of indefinite duration.[7]

¶ 21 Second, conspicuously absent from the dissent's analysis is any citation to Utah precedent that supports its position. Contrary to the dissent's position, when a contract for employment or personal services does not recite a fixed term, the law in Utah does not call for the judicial reformation of the contract to impose a term, especially where, as here, neither party disputes the contract was of indefinite duration. Indeed, in a case in which we traced the historical development of the law associated with employment contracts, we specifically noted that courts long ago repudiated a common law

rule under which a term was implied when an employment contract did not specify a duration. *Berube v. Fashion Centre, Ltd.*, 771 P.2d 1033, 1040–41 (Utah 1989).[8] In its place, courts in Utah and elsewhere adopted the at-will employment rule, under which employment contracts that did not specify a duration were generally presumed to be terminable at will. *Id.* at 1041. In time, Utah recognized an exception under which an employee could rebut the at-will presumption associated with indefinite-length contracts by showing the parties intended the contract be terminable for cause. *Johnson*, 818 P.2d at 1000–01 & n. 9; *see also Brehany v. Nordstrom, Inc.*, 812 P.2d 49, 54 (Utah 1991). Significantly, nothing in *Johnson, Brehany,* or *Berube* suggests that a court should sua sponte impose a term on an indefinite-length employment contract that provides for termination for cause.

¶ 22 Applying Utah precedent to Dr. Hardy's contract confirms our view that a term should not be read into the contract. First, because Dr. Hardy's contract does not specify a duration, under Utah law we initially presume it is of indefinite duration but terminable at will. *Berube*, 771 P.2d at 1040–41. We do not apply the long-since rejected rule

---

length contract with a "just cause" provision is of reasonable duration, UBMC clearly agrees that the contract was of indefinite duration:

> The potentially perpetual duration of Dr. Hardy's contract with UBMC was limited only by the "just cause" provision.... [Dr. Hardy's] contract bound Duchesne County indefinitely....

Appellee's Br. at 28–29.

6. The dissent acknowledges that parties may enter into an indefinite-length contract.

7. The dissent acknowledges that "both parties contend that the contract should be evaluated as an indefinite-length contract limited only by just cause," yet nonetheless argues for the imposition of a fixed duration. The dissent has cited no cases, nor are we aware of any, in which we rejected parties' mutual concessions that are in harmony and clearly expressed. Given that the goal in interpreting contracts is to give effect to the intent of the parties, we should be particularly reluctant to reject the parties' stipulations or concessions in this case.

The clear import of the parties' concessions is that the parties intended the contract to be of indefinite duration. The imposition of a fixed duration is therefore incompatible with the par-

ties' concessions. Moreover, the law in Utah and numerous other jurisdictions recognizes the right of parties to enter into indefinite length contracts terminable for cause. *Johnson v. Morton Thiokol, Inc.*, 818 P.2d 997, 1000–01 & n. 9 (Utah 1991); *e.g., Shah v. Am. Synthetic Rubber Corp.*, 655 S.W.2d 489, 491–92 (Ky.1983). In short, the imposition of a term would contradict the parties' stated intent, disregard their legal arguments, and impede their freedom to contract. This we decline to do.

Significantly, the dissent also acknowledges that the parties have not argued in their appellate briefs that a term should be implied into the contract. In the absence of adequate briefing, it would be ill-advised for the court to raise this issue sua sponte, especially if the dissent is correct in asserting that this issue presents a question of first impression. *Prince v. Bear River Mut. Ins. Co.*, 2002 UT 68, ¶ 59, —— P.3d ——, 2002 WL 1610562 ("On myriad occasions, we have held that we will not address issues inadequately briefed.").

8. Although *Berube* was a plurality opinion, a majority of the court concurred in the portion of the opinion that traced the historical development of the common law of employment contracts.

that previously required the implication of a term. *Id.* Second, we consider whether any of the exceptions to the at-will rule applies. In this regard, we note that the parties expressly provided the contract was terminable for "just cause." We further note that the parties agree in their appellate briefs that the contract is of indefinite length and terminable only for "just cause." Accordingly, we conclude that the at-will presumption has been rebutted and Dr. Hardy's indefinite-length contract is terminable for "just cause." *Johnson,* 818 P.2d at 1000–01 & n. 9; *see also Brehany,* 812 P.2d at 54.[9]

¶ 23 Finally, we disagree with the dissent's contention that the imposition of a term is justified as a means of easing the calculation of prospective damages.[10] The dissent itself concedes that parties can contract for an indefinite term. In making this concession, the dissent implicitly acknowledges that, to give effect to the parties' intent, courts inevitably and routinely need to determine damages associated with a breach of an indefinite employment contract. In making such determinations, courts have relied on various factors in addressing the kinds of concerns raised by the dissent:

> While a district court has considerable experience in calculating future earnings,

some basis must appear in the record for such an award. Some of the factors which district courts have employed to alleviate the speculative nature of future damage awards include an employee's duty to mitigate, "the availability of employment opportunities, the period within which one by reasonable efforts may be re-employed, the employee's work and life expectancy, the discount tables to determine the present value of future damages and other factors that are pertinent on prospective damage awards."

*Shore v. Fed. Express Corp.,* 777 F.2d 1155, 1160 (6th Cir.1985) (quoting *Koyen v. Consol. Edison Co.,* 560 F.Supp. 1161, 1168–69 (S.D.N.Y.1983)). "It is not difficult to determine the ... factors that are pertinent on prospective damage awards." *Koyen,* 560 F.Supp. at 1168–69. Regardless, while the determination of damages presents challenges, so would the determination of a "reasonable" duration, especially when both parties on appeal appear resistant to the imposition of a term.

## CONCLUSION

¶ 24 We conclude that Dr. Hardy's contract for pathological services is a proprie-

---

9. The cases cited by the dissent are (1) from other jurisdictions and therefore not binding and (2) are either distinguishable from, or inapposite to, the present case. In reaching its conclusion, the dissent relies heavily on cases not involving employment contracts. This reliance is tenuous given the fact that courts have developed a unique set of rules for employment and personal service contracts. *See generally Berube,* 771 P.2d at 1040–41; *Consol. Theatres, Inc. v. Theatrical Stage Employees Union, Local 16,* 69 Cal.2d 713, 73 Cal.Rptr. 213, 447 P.2d 325, 335 & n. 12 (1968) (noting that due to special policy considerations associated with employment contracts, such contracts are exempt from rule applicable to other contracts under which courts imply a term when a contract is silent as to duration).

For example, the dissent cites *Mid–Southern Toyota, Ltd. v. Bug's Imports, Inc.,* 453 S.W.2d 544, 549 (Ky.1970) in support of its position. That case did not involve an employment contract, however, and, moreover, when faced with an employment contract, the relevant jurisdiction (Kentucky) relies on rules of interpretation specifically tailored to employment contracts. *Shah v. Am. Synthetic Rubber Corp.,* 655 S.W.2d 489, 491–92 (Ky.1983) (confirming parties' right to enter into contracts under which person is employed for an indefinite period of time and may

be terminated only for cause). Accordingly, the more pertinent case from the cited jurisdiction is consistent with the view that when an employment contract is silent as to duration, courts generally do not imply a fixed term of years. *See id.* Instead, as in *Johnson,* Kentucky courts presume such a contract is terminable at will unless the parties clearly express another criterion for termination (e.g., for cause). *Id.*

The cases cited by the dissent that involve employment contracts provide little support for its conclusion that a term must be imposed on Dr. Hardy's contract. For example, when faced with an indefinite-length employment contract, the court in *Paisley v. Lucas* did not impose a term but rather applied rules of construction specific to employment contracts. 346 Mo. 827, 143 S.W.2d 262, 271 (1940).

10. The dissent asks the following:

> [If hospital breached the contract], how would Dr. Hardy's damages be calculated? Would Dr. Hardy be entitled to all of his loss of earnings under the indefinite contract? [W]ould he be entitled to compensation ... to the date of his death? To the date of his retirement? To the date of his inability to perform his job responsibilities ... ?

tary contract, and thus is enforceable against successor UBMC boards of trustees if it is of a reasonable duration. Accordingly, we remand to the district court to permit it to determine whether the contract's duration is reasonable.

¶ 25 Remanded.

¶ 26 Chief Justice DURHAM and Judge BENCH concur in Justice DURRANT's opinion.

RUSSON, Justice, concurring in part and dissenting in part.

¶ 27 I concur with the majority opinion that the contract in question is proprietary in nature and could therefore bind the successor trustees of the hospital. However, I differ with the analysis of the opinion as to how the trial court is to determine the reasonableness of the duration of the contract on remand.

¶ 28 Well-settled canons of contract construction and interpretation dictate that the trial court, when faced with a contract of employment that is silent as to its duration, and thus indefinite in length, but expressly terminable only for just cause, should determine by implication a reasonable term of duration under the circumstances and then imply that reasonable term into the contract as a matter of law. Once the trial court determines a reasonable term and implies it into the contract as a matter of law, the trial court then should evaluate the implied duration of the contract to determine if the duration of the contract was reasonable for purposes of deciding whether the successor trustees of the hospital are bound by the contract.

¶ 29 The employment contract between Uintah Basin Medical Center and Dr. Hardy did not include a specific term of duration and therefore was of indefinite duration or perpetual in nature. It did, however, expressly indicate that the contract could be terminated only for just cause. *Corbin on Contracts* provides guidance on how to treat such a contract and indicates what legal effect such a contract is to be given when it states:

> When parties make a *contract of employment without specifying the length of service,* but indicate that it is *not terminable at will,* the legal effect is that the *parties are bound for a "reasonable time."* This is based upon "implication" [i.e., the implication of a reasonable term of duration].

Catherine M.A. McCauliff, 8 *Corbin on Contracts* § 34.11, at 262 (revised ed.1999) (emphasis added); *see also Consol. Theatres, Inc. v. Theatrical Stage Employees Union Local 16,* 69 Cal.2d 713, 73 Cal.Rptr. 213, 447 P.2d 325, 335 (1968) (en banc); *Ansbacher–Siegle Corp. v. Miller Chem. Co.,* 137 Neb. 142, 288 N.W. 538, 541 (1939); *Tavel v. Olsson,* 91 Nev. 359, 535 P.2d 1287, 1288 (1975); *Smith v. Knutson,* 76 N.D. 375, 36 N.W.2d 323, 328 (1949), *overruled on other grounds by Neibauer v. Well,* 319 N.W.2d 143 (N.D. 1982); *Hall v. Hall,* 158 Tex. 95, 308 S.W.2d 12, 15 (1957) ("Now it is doubtless true that, in contracts of the general type of the instant one [an employment contract for services], a term of reasonable duration may be implied, with the result that they are not void for lack of an essential provision and are not terminable at will."); *Edwards v. Morrison–Knudsen Co.,* 61 Wash.2d 593, 379 P.2d 735, 738 (1963); 27 Am.Jur.2d *Employment Relationship* § 38 (1996) (citing *Shah v. Am. Synthetic Rubber Corp.,* 655 S.W.2d 489 (Ky.1983)).[1]

---

1. The majority opinion criticizes this dissent for its citation to applicable, persuasive authority from the highest courts of our kindred states and dismisses that authority as nonbinding. Where this court has not addressed a particular question of law and where authoritative precedent from our own jurisdiction is absent, this court has not been reluctant to seek out the experience, reasoning, and counsel of the decisions of other high courts as persuasive guidance in our deliberations.

The majority opinion also criticizes the dissent for its citation to certain cases involving contracts other than for the provision of employment or personal services. However, all of the cases cited in this paragraph involve contracts for employment or personal services.

This dissent does cite to other nonemployment contract cases later in ¶ 32 for the additional proposition that courts generally will imply a term of duration into indefinite-length contracts. The majority opinion maintains that those nonemployment cases are inapposite and that this dissent's reliance on them is tenuous because the courts have developed "a unique set of rules for employment and personal services contracts."

This is precisely the situation presented in the instant case.

¶ 30 The determination of what constitutes a "reasonable time" of duration of the indefinite-length employment contract that is not terminable at will is either "(1) the time that seems reasonable in the light of the circumstances existing when the contract was made [or] (2) the time that seems reasonable in light of the circumstances as they occur during the course of performance." McCauliff, 8 *Corbin on Contracts* § 34.11, at 262. The reasonableness of an implied duration term is a question of fact and is determined in reference to the circumstances surrounding the transaction, the situation of the parties, and the subject matter of the contract. *See William B. Tanner Co. v. Sparta Tomah–Broad. Co.*, 716 F.2d 1155, 1159–60 (7th Cir.1983); *Metal Assocs., Inc. v. E. Side Metal Spinning & Stamping Corp.*, 165 F.2d 163, 165 (2d Cir.1947); *Consol. Theatres, Inc.*, 73 Cal. Rptr. 213, 447 P.2d at 335; *Brown Loan & Abstract Co. v. Willis*, 150 Ga. 122, 102 S.E. 814, 815 (1920); *Ansbacher–Siegle Corp.*, 288 N.W. at 541; *Tavel*, 535 P.2d at 1288; *Borough of W. Caldwell v. Borough of Caldwell*, 26 N.J. 9, 138 A.2d 402, 412 (1958); *Hall*, 308 S.W.2d at 16–17; 17B C.J.S. *Contracts* § 440 (1999); Margaret N. Kniffin, 5 *Corbin on Contracts* § 24.29 (revised ed.1998).

¶ 31 *Corbin on Contracts*' suggested treatment of contracts of this nature is based upon and supported by well-settled principles and rules of contract construction and interpretation. In the instant case, the employment contract was silent as to its duration and therefore indefinite or perpetual. Contracts of perpetual duration are generally disfavored by the law. *See Paisley v. Lucas*, 346 Mo. 827, 143 S.W.2d 262, 270 (1940) ("The courts are prone to hold against the theory that a contract confers a perpetuity of right or imposes a perpetuity of obligation." (quotation omitted)); *see also Borough of W. Caldwell*, 138 A.2d at 412; *Farley v. Salow*, 67 Wis.2d 393, 227 N.W.2d 76, 82 (1975). Interpretations which avoid construing a contract to have an indefinite duration are preferable. *See Borough of W. Caldwell*, 138 A.2d at 412–13; *Farley*, 227 N.W.2d at 82; *Kovachik v. Am. Auto. Ass'n*, 5 Wis.2d 188, 92 N.W.2d 254, 256 (1958). Because the law disfavors contracts of perpetual performance or duration, courts will interpret a contract as being of indefinite duration only where the parties to the contract have clearly and unambiguously indicated their intentions to create a contract of indefinite duration through the use of express and positive language to that effect in the contract.[2] *See William B.*

---

To the extent that the cases mentioned by the majority opinion as recognizing special and different rules for employment contracts actually refer to special rules or policy considerations for employment contracts, they do so only in reference to the adoption of the general "at-will" employment doctrine and its exceptions. Those cases do not recognize special and different rules with respect to the propriety of implying a reasonable term into an employment contract that is silent as to its duration but outside of the "at-will" employment doctrine because of the explicit inclusion of an express "just cause" provision, such as the contract at issue here. In this regard, the majority opinion misreads *Berube v. Fashion Centre, Ltd.*, 771 P.2d 1033 (Utah 1989), *Consolidated Theatres, Inc., Shah*, and *Paisley v. Lucas*, 346 Mo. 827, 143 S.W.2d 262 (1940). The cases cited herein otherwise stand for the proposition for which they are cited and support the implication of duration for a reasonable period.

2. The majority opinion notes that the parties have not argued in their appellate briefs that a term should be implied into the contract and that both parties contend that the contract should be evaluated as an indefinite-length contract limited

only by the just cause provision. This incorrectly elevates the parties' arguments in the briefs to the level of an agreement between the parties on this point and treats it as a stipulation. Nothing in the record or the briefs indicates that the parties have stipulated in the manner the majority opinion claims. The parties do not deny that they did not include an explicit provision in the contract expressing their intentions purposely to create an indefinite-length contract. If the parties to a contract intend to create an indefinite-length contract, they *must* express their intentions to do so through clear, unambiguous, and unequivocal language *in the contract*. The parties' questionable "concession" in this regard in their briefs on appeal obviously fails to meet this standard and is contrary to the rule of law stated in the cited authority. Both *Johnson* and *Shah* may recognize the rights of parties to enter into indefinite-length contracts, but they do not dispute or contradict the requirement that the parties do so using explicit language in their contract.

In any event, under normal circumstances, we will treat particular facts or issues as stipulated to by the parties only where such a stipulation is clear and expressed. Rarely, if ever, do we find

*Tanner Co.*, 716 F.2d at 1159 ("Courts are reluctant to interpret contracts providing for some perpetual or unlimited contractual right unless the contract clearly states that that is the intention of the parties."); *Mid–Southern Toyota, Ltd. v. Bug's Imps., Inc.*, 453 S.W.2d 544, 549 (Ky.1970) ("The general rule is that a construction conferring a right in perpetuity will be avoided unless compelled by the unequivocal language of the contract."); *Paisley*, 143 S.W.2d at 271 ("A contract [for employment] for life will be upheld only where the intention, that the contract's duration is for life, is clearly expressed in unequivocal terms."); *Borough of W. Caldwell*, 138 A.2d at 412–13 ("[A] construction affirming a [contractual performance] right in perpetuity is to be avoided unless given in clear and peremptory terms," and "[i]t is not often that a promise will properly be interpreted as calling for perpetual performance" (internal quotations omitted)); 17B C.J.S. *Contracts* § 439 (1999) ("[A] construction conferring a right in perpetuity will be avoided unless compelled by the unequivocal language of the contract [and] a contract which purports to run in perpetuity must be adamantly clear that that is the parties' intent, in order to be enforceable."). Likewise, employment contracts that do not explicitly express the parties' intentions that the contract be for lifetime or permanent employment have been held to be unenforceable or merely terminable at the will of either party. *See Chastain v. Kelly–Springfield Tire Co.*, 733 F.2d 1479, 1482, 1484 (11th Cir.1984); *Littell v. Evening Star Newspaper Co.*, 120 F.2d 36, 37 (D.C.Cir.1941); 30 C.J.S. *Employer–Employee Relationship* § 23 (1992).

¶ 32 Where a contract is of indefinite or perpetual duration because of the lack of an explicit term, the law will imply into the contract a term that is reasonable under the circumstances. *See* McCauliff, 8 *Corbin on Contracts* § 34.11, at 262; *see also Metal Assocs., Inc.*, 165 F.2d at 165; *Consol. Theatres, Inc.*, 73 Cal.Rptr. 213, 447 P.2d at 335; *Brown Loan & Abstract Co.*, 102 S.E. at 815; *Anne Arundel County v. Crofton Corp.*, 286 Md. 666, 410 A.2d 228, 232 (1980); *Ansbacher–Siegle Corp.*, 288 N.W. at 541; *Tavel*, 535 P.2d at 1288; *Borough of W. Caldwell*, 138 A.2d at 412–13; *Erskine v. Chevrolet Motors Co.*, 185 N.C. 479, 117 S.E. 706, 713–14 (1923); *Harris v. Ohio Oil Co.*, 57 Ohio St. 118, 48 N.E. 502, 505 (1897); *Hall*, 308 S.W.2d at 15; *Farley*, 227 N.W.2d at 82; 17A Am.Jur.2d *Contracts* § 546 (1991); 27 Am.Jur.2d *Employment Relationship* § 38 (1996) (citing *Shah*, 655 S.W.2d 489); 17B C.J.S. *Contracts* § 421 (1999); Kniffin, 5 *Corbin on Contracts* § 24.29.

¶ 33 The majority opinion criticizes this dissent for its lack of citation to Utah precedent in support of determining and implying a reasonable term of duration into the contract. This is empty criticism given that this case presents an issue of first impression in this jurisdiction.

¶ 34 The majority opinion incorrectly relies on *Berube v. Fashion Centre, Ltd.*, 771 P.2d 1033 (Utah 1989), *Brehany v. Nordstrom, Inc.*, 812 P.2d 49 (Utah 1991), and *Johnson v. Morton Thiokol, Inc.*, 818 P.2d 997 (Utah 1991), as binding Utah authority that purportedly rejects the dissent's approach in this case. While the majority is correct in noting "that nothing in *Johnson, Brehany*, or *Berube* suggests that a court should sua sponte impose a term on an indefinite-length employment contract that provides for termination for cause," nothing in those decisions

---

a stipulation of this nature by implication. The notion of an implied stipulation is contrary to the very nature of a stipulation as a clear, definite, and certain agreement by the parties as to the truth or validity of a particular fact.

Finally, the majority opinion also admonishes the dissent that "[i]n the absence of adequate briefing, it would be ill-advised for the court to raise [the issue of implying a reasonable term] sua sponte, especially [where] this issue presents a question of first impression." This, however, ignores our settled position that this court has inherent authority to consider arguments and issues that the parties have not raised or recog-

nized if it is necessary to a proper decision and to avoid bad law. *See Kaiserman Assocs., Inc. v. Francis Town*, 977 P.2d 462, 464 (Utah 1998) ("[A]n overlooked or abandoned argument should not compel an erroneous result [and][w]e should not be forced to ignore the law just because the parties have not raised or pursued obvious arguments."). Simply because the parties did not recognize the issue on appeal or because they are in supposed agreement in their argumentative position, erroneous as it may be, on appeal, we will not ignore a genuine legal issue or acquiesce in the parties' error and apply incorrect legal principles.

would prohibit the implication of a reasonable term into the contract either. Those cases simply do not go as far as articulating a governing rule applicable to the case at hand and are focused on a separate and discrete issue not present in the instant case.

¶ 35 Specifically, the majority opinion's assertion that in *Berube* we noted (and purportedly endorsed) the notion that "courts long ago repudiated a common law rule under which a term was implied when an employment contract did not specify a duration" is not entirely correct and overstates *Berube*. The central issue in *Berube* was whether the termination-related provisions of an employer's employee handbook could be implied into the employment contract as implied-in-fact contract terms between the employer and employee such that the original indefinite-length employment contract would escape application of the "at-will" employment doctrine that provides an indefinite-length employment contract is terminable by either party for good cause, cause, or no cause at all.

¶ 36 In the "historical development" portion of Justice Durham's plurality opinion in *Berube*, to which the majority opinion in this case cites, Justice Durham merely traced the historical development and adoption of the "at-will" employment doctrine in the United States.

¶ 37 In any event, that section of *Berube* does not stand for the proposition offered by the majority opinion. The historical review section of the *Berube* plurality opinion simply described the nineteenth century English common law rule stating that English courts, when faced with employment contracts of indefinite duration, would imply an arbitrary one-year term into the contract. *Berube*, 771 P.2d at 1040–41; *see also* McCauliff, 8 *Corbin on Contracts* § 34.11, at 257. *Berube*'s historical review merely noted that American courts rejected the arbitrary one-year term implied by English courts in favor of the "at-will" employment doctrine. *Berube*, 771 P.2d at 1040–41. *Berube* simply acknowledged the historical rejection of the implication of a term of duration in an "at-will" employment contract. *See id.* It does not, as the majority opinion claims, reject the notion that a

reasonable term could or should be implied into an employment contract that is by its own terms outside the "at-will" employment doctrine because of a just cause provision such that the parties are bound for a "reasonable time." *See* McCauliff, 8 *Corbin on Contracts* § 34.11, at 262. In fact, Justice Durham's opinion in *Berube* notes that the rejection of the English common law implied one-year term and the adoption of the "at-will" employment doctrine in the United States was "adopted by many jurisdictions without careful or thorough examination." *Berube*, 771 P.2d at 1040. Thus, the most *Berube* can be cited for in this regard is the proposition that American courts uncritically rejected the arbitrary one-year implied term rule used by the English courts, but not the apparently unconsidered, yet supportable, notion that a reasonable term could or should be implied into an indefinite-length employment contract that by its own terms is not terminable at will. *See* McCauliff, 8 *Corbin on Contracts* § 34.11, at 262. Therefore, the majority opinion's statement in applying purportedly controlling Utah precedent to this case that "[w]e do not apply the long-since rejected rule that previously required the implication of a term" is based on a misinterpretation of *Berube*'s historical review. Regardless, this portion of the plurality *Berube* opinion, despite being joined by a majority of the court, was at best dicta in that it was historical exposition. *Berube* and its progeny simply do not prohibit the implication of a reasonable term into the contract at hand and are not binding precedent that govern whether a term of duration should be implied into the contract at issue.

¶ 38 Finally, *Johnson* and *Brehany* likewise do not govern the present case or bar the imposition of an implied reasonable term of duration into the contract. *Brehany* and *Johnson*, like *Berube*, were employee handbook or implied-in-fact contract term cases but go no further than *Berube* in their holdings and no more state an on-point or governing rule applicable in this case than does *Berube*.

¶ 39 *Berube*, *Brehany*, and *Johnson* all involved indefinite-length employment contracts and claims of wrongful termination.

However, these cases merely explore and set rules for determining whether a plaintiff employee's claim for wrongful termination can escape the general "at-will" employment doctrine. In other words, in those cases, this court was asked to determine whether an implied-in-fact term existed which would remove the contract from the general "at-will" employment doctrine under which a plaintiff employee could not sustain a wrongful termination action. If such an implied-in-fact term was found to exist, for example where an employer's employee handbook specified exclusive reasons for termination of its employees, then those provisions of the employment handbook were treated as implied-in-fact contract terms, removing the employment contract from the "at-will" employment doctrine rules and preventing the employer from terminating the contract for any or no cause.

¶ 40 The case at hand involves an indefinite-length contract which contained an express "just cause" provision. Because that provision was expressed, the analysis and rules in *Berube, Brehany,* and *Johnson* are not applicable; we already know that the express "just cause" provision takes us out of the general "at-will" employment doctrine rule. The issue here is how the trial court is to determine whether the duration of the contract is reasonable and how it is to arrive at such a reasonable duration. This is a question not previously addressed to this court and to which *Berube, Brehany,* and *Johnson* are not instructive. The legal propositions and rules of contract construction and interpretation presented in this dissent are more appropriate for use by the trial court in adjudicating this controversy on remand.

¶ 41 Once the trial court determines the reasonable term under the circumstances and that term is implied by law into the contract, the contract will necessarily be enforceable against the succeeding board under the second prong of the *Bair* test articulated in the majority opinion because (1) the activity contracted for is proprietary and (2) the term or duration that was implied into the contract is de facto reasonable under the circumstances.

¶ 42 Having determined the reasonable duration of the contract, and therefore its enforceability, the trial court must then determine if the hospital breached the contract when it terminated Dr. Hardy. It could terminate him before the expiration of the implied term only for "just cause." If the trial court determines that the hospital had just cause to terminate the contract with Dr. Hardy, the hospital did not breach the contract and Dr. Hardy is not entitled to damages. If the trial court determines that the hospital did not have just cause to terminate the contract with Dr. Hardy, then the hospital breached the contract and Dr. Hardy is entitled to damages calculated consistent with the reasonable employment duration term implied into the contract. *See Bad Wound v. Lakota Cmty. Homes, Inc.,* 1999 SD 165, ¶ 11, 603 N.W.2d 723, 726.

¶ 43 Under the majority opinion's analysis, Dr. Hardy's damages, assuming the hospital is liable to Dr. Hardy for terminating him without just cause, would be speculative, at best, and undeterminable, at worst, absent a finite term of duration in the contract. *See Benham v. World Airways, Inc.,* 432 F.2d 359, 360, 361–62 (9th Cir.1970); *Sterling Drug, Inc. v. Oxford,* 294 Ark. 239, 743 S.W.2d 380, 386–87 (1988). It is for this reason that the law disfavors contracts of perpetual duration and why, when faced with contracts of indefinite duration, courts will imply a reasonable term of duration. If on remand the perpetual contract is held to be enforceable and the trial court determines that the hospital did not have just cause to terminate the contract, how would Dr. Hardy's damages be calculated? Would Dr. Hardy be entitled to all of his loss of earnings under the indefinite contract? In other words, would he be entitled to compensation under the contract from the date of termination to the date of his death? To the date of his retirement? To the date of his inability to perform his job responsibilities, whenever that might be? Determining a reasonable term for the contract under the circumstances and implying it into the contract would avoid the possibility of speculative or undeterminable damages.

¶ 44 The majority opinion disagrees that imposition of a definite term is justified and argues that the trial court would face similar "challenges" in determining a reasonable term of duration under the circumstances as it would in determining Dr. Hardy's speculative damages. The approach advocated in this dissent would focus the trial court's attention and efforts on the discrete task of discerning a reasonable term for the contract under the circumstances, thus centering the inquiry on the parties' intentions, the nature of the parties' relationship, and the overall circumstances surrounding the formation of the contract at issue. *See* McCauliff, 8 *Corbin on Contracts* § 34.11, at 262. The majority opinion's suggestion for determining Dr. Hardy's potential damages would take the trial court's attention away from the contract itself and the context in which it was formulated and focus on myriad distant and less related factors, all of which remain at least to some extent speculative in nature. I would not send the trial court into the majority opinion's briar patch of thorny factors. In this case,[3] it would be far less complicated and less speculative for the trial court to determine Dr. Hardy's potential damages in relation to an implied reasonable term.

¶ 45 I would remand to the trial court but with instructions consistent with this concurring opinion.

¶ 46 Justice HOWE concurs in Justice RUSSON's concurring and dissenting opinion.

---

3.  The majority opinion also argues that under the dissent's analysis courts will "inevitably and routinely need to determine damages associated with a breach of an indefinite employment contract." This is incorrect. The vast majority of cases involving issues of termination under indefinite-length employment contracts will be governed by the "at-will" employment doctrine. In those instances, the issue of damages would not arise because the employment relationship would be terminable by either party for any reason. The problematic issue of damages arises only in the very rare and unique case, such as the one at hand, where an expressed or implied "just cause" term is a part of the indefinite duration contract, thus removing the case from the application of the usual "at-will" employment doctrine rule.